572 P.2d 861

**Riley MATHESON and Muriel Matheson, husband and wife, Plaintiffs-Respondents,**

v.

**Gary S. HARRIS and Frank D. Maughan, Defendants-Appellants.**

No. 12121.

Supreme Court of Idaho.

May 4, 1977.

On Rehearing Dec. 28, 1977.

Herman E. Bedke of Nielson & Bedke, Burley, for defendants-appellants.

Thomas H. Church of Church, Church & Snow, Burley, for plaintiffs-respondents.

BISTLINE, Justice.

This same case, on a different issue, was before this Court in *Matheson v. Harris,* 96 Idaho 759, 536 P.2d 754 (1975). The issue there was appellants Harris and Maughan's counterclaim for specific enforcement of their earnest money agreement for the purchase of 1,280 acres of farmland from respondents Riley Matheson, et ux. In that case we upheld the trial court's grant of summary judgment dismissing the counterclaim and ruled that the earnest money agreement here involved was too ambiguous and hence was not an enforceable contract.

The action we review today is founded on an alleged slander of title to real property. This is a case of first impression in this Court. Counsel are agreed that slander of title is premised upon a false and malicious statement, be it oral or written, made in disparagement of a person's title to real or personal property causing him special damages. They agree equally that there are four essential elements to a cause of action: (1) the uttering and publication of the slanderous words by the defendant; (2) the falsity of the words; (3) malice, and (4) special damages;[1] and it is upon this theory the case was tried in the court below.

The controversy between the parties here centers upon the recording of a document entitled "Earnest Money Receipt and Offer to Purchase," attached to a cover sheet entitled "NOTICE." The Earnest Money Receipt bears the signatures of Riley Matheson and his wife, Muriel, the sellers, who are the plaintiffs and respondents herein, and also bears the acknowledged signatures of the buyers, defendants and appellants herein, Gary S. Harris and Frank D. Maughan. Maughan's acknowledged signature

appears on the Notice, which describes the two sections of land which are mentioned but not described on the earnest money agreement. The Notice itself states:

"Notice is hereby given that a Contract was entered into between Riley Matheson and Muriel Matheson, Husband and Wife, Sellers and Gary S. Harris and Franklin D. Maughan, Buyers, for the purchase of 1280 acres of land described as follows:
. . . [there follows a metes and bounds description]."

The earnest money agreement evolved out of negotiations between Harris and Maughan and the Mathesons, the Mathesons being represented by a real estate salesman, Hal Peterson, with whom Harris and Maughan dealt initially in their attempt to purchase the property. Matheson had applied for a $105,000.00 mortgage loan, and with great expectations, the parties negotiated as though the loan was an accomplished fact. Harris and Maughan submitted their offer to purchase for a total price of $225,000.00, part of which was to be paid by assuming the non-existent "existing mortgage," a down payment of $25,000.00 cash which was placed with Peterson, and a 20 year contract on the balance. The offer was made subject to inspection and satisfaction by Harris and Maughan.

Several days later, Matheson, on the same document, made a counteroffer open until 12:00 o'clock noon on the 21st day of January, 1974, which raised the time price to $231,000.00, with assumption of "the mortgage," and increased the interest rate by one-half of one percent. His counteroffer also provided for a cash price of $221,-000.00, "part of which can be $105,000.00 Kansas City loan which seller will obtain."

1. The more modern approach is to label such a cause of action as one for "injurious falsehood" or "disparagement of title," to focus on the interference with salability rather than with the slander of a personified title, and to consider both "falsity" and "malice" under the single test of "reasonable belief in the efficacy" of one's recorded interest. We hear this case as presented to us by the parties and decline to rule on what outcome might be dictated under other legal theories. *see, Zamarello v. Yale,*

514 P.2d 228 (Alaska 1973); *Barnett v. Hitching Post Lodge, Inc.,* 101 Ariz. 488, 421 P.2d 507 (1966); *Gates v. Utsey,* 177 So.2d 486 (Fla. App.1965); *Kidd v. Hoggett,* 331 S.W.2d 515 (Tex.1960); *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (1956). *And see,* Prosser, Injurious Falsehood: The Basis of Liability, 59 Col.L. Rev. 425 (1959); Annot: Recording of Instrument Purporting to Affect Title as Slander of Title, 39 A.L.R.2d 840 (1955).

Both Matheson and his wife signed the counteroffer but neither signature was acknowledged. Harris and Maughan at all times have contended that they made a timely acceptance of the counteroffer but this was denied by the Mathesons, who contended that they made numerous telephone calls until noon on January 21, 1974, to Peterson, who told them that Harris and Maughan had not accepted. Whereupon, Matheson began negotiating with another broker for a sale to other parties. The findings reflect that Harris and Maughan knew that "other buyers were interested in the land." At this stage, Harris and Maughan filed for record the Notice with the attached Earnest Money Receipt and Agreement to Purchase.

Mathesons apparently recognized that they could not prevail on their slander of title suit if Harris and Maughan were entitled to prevail on their cross-action for specific performance. Mathesons made their motion for a summary judgment on that issue, contending that there was no agreement as a matter of law. A supporting document to the motion was a letter from Matheson's counsel to counsel for Harris and Maughan, stating that since the offer was based upon the Kansas City Life Insurance Company loan, which had not materialized, "the agreement is null and void."

The trial court's decision was that the agreement was vague, uncertain and ambiguous to the extent that specific performance could not be adjudged, there was no meeting of the minds on essential terms, and no compliance with § 32–912, Idaho Code. We affirmed because of the ambiguity in describing the land, the assumption of a non-existent mortgage, and also mentioned the method of acceptance. *Matheson v. Harris, supra.*

While the cross-action was pending on appeal in this Court, the trial judge set the Matheson's slander-of-title action for trial on April 30, 1975, specifically noting the pending appeal:

"It is understood that such trial is a matter of expediency and the preservation of testimony by witnesses and the awarding of damages to either of the parties by

decision and judgment of the Court will not be reduced to final form until a decision has been rendered by the Supreme Court of Idaho on the Appeal."

That trial was had as scheduled, following which the parties, through counsel, filed a formal stipulation that the court reserve making its decision "until the Supreme Court of Idaho renders its decision on the appeal . . . ." Following the June 13, 1975, release of our opinion in *Matheson v. Harris, supra,* the trial court apparently received briefs from counsel, and by letter of August 25, 1975, to counsel for Matheson, set compensatory and punitive damages, stating only as to the manner in which the decision was reached:

"I am persuaded by the evidence and your written arguments that your cause for damages is just,"

and directing:

"You will kindly prepare findings of fact and conclusions of law in support of the foregoing decision, together with judgment."

Matheson's counsel, not favored with a memorandum decision, in his endeavor to comply with that directive, fashioned 39 separately stated Findings of Fact and 16 separately stated Conclusions of Law, primarily aimed at establishing the elements of falsity, malice, and special damages. These Findings and Conclusions were adopted by the trial court verbatim and judgment was entered for substantial damages.

On this appeal Harris and Maughan assign as error that the evidence does not sustain counsel-drafted findings on those elements of falsity, malice and special damages. Because we conclude as a matter of law that the record does not sustain a finding of falsity, which is dispositive of the appeal, we need not go on to considerations of malice and damages.

 In a slander of title action, unlike actions for personal slander, plaintiff retains the burden of establishing the falsity of the publication:

"There is no presumption, as in the case of personal slander, that the disparaging

statement is false, and the plaintiff must establish its falsity as a part of his cause of action." Prosser, The Law of Torts, p. 920 (4th ed. 1971).

Despite the voluminous findings of fact and conclusions of law signed by the trial judge, the sole ones pertinent to the issue of "falsity" are Finding of Fact number 24 which states simply:

"The 'Notice of Contract' was false and untrue," and Conclusions of Law number 6 which states:

"The recording of the 'Notice of Contract' by the defendants in the records of the offices of the recorders of Lincoln and Minidoka Counties, State of Idaho, which incorporated the counteroffer was the publication of a false document as it was recorded and held out by the defendants as a final expression of a contract between the parties and as enforceable and binding."

Harris and Maughan argue to us that the earnest money agreement was not a "false" document, and we agree. It was the signed product of negotiations between the Mathesons, as sellers, and Harris and Maughan, as buyers. The parties, initially unaided by counsel, set down the terms and provisions by which they must have expected to be bound, looking toward an acceptance which would bring about the sale. They fell apart on the matter of acceptance by Harris and Maughan, and it then required first a district court, and then this Court, to tell them that the agreement which they had put together was not an enforceable one, the fact of an acceptance being immaterial.

■ The determination of the trial court, sustained by this Court, that the earnest money agreement was *not enforceable by the court* does not render it a "false document." It should be noted that our decision in *Matheson v. Harris, supra,* relied upon the then recently decided case of *Luke v. Conrad,* 96 Idaho 221, 526 P.2d 181 (1974), a decision which was not handed down until nearly six months *after* Harris and Maughan recorded their notice. In *Luke v. Conrad, supra,* this Court *reversed* an order of the trial court which had allowed the remedy of specific performance of an ear-

nest money agreement. To hold that the recording of the earnest money agreement, when the enforceability thereof had not yet been determined, was the publishing of a false document, would be to hold Harris and Maughan to a higher standard of prescience than that manifest in the district courts of Idaho at the time.

■ Harris and Maughan, in support of recording the earnest money agreement, with the cover sheet, captioned "Notice", cite us to I.C. § 55–801, which provides:

"Any instrument or judgment affecting the title to or possession of real property may be recorded under this chapter."

The primary purpose of the recording statutes is to give notice to others that an interest is claimed in real property, and thus give protection against bona fide third parties who may be dealing in the same property. Here the earnest money agreement was signed by all parties, but not acknowledged by the sellers, the Mathesons. In this condition, with an acknowledged cover sheet, the county recorders of two counties accepted and recorded the document. If entitled to recordation, it was constructive notice as to its contents; if not, the contrary is the case. I.C. § 55–811. In either event, the extent of the interest claimed was clear for all to see, the earnest money agreement itself being part of the recordation. To record, whether a deed, a mortgage, or a contract, is to give notice, and we are unable to see that attaching a "Notice" cover sheet, to that which under the statutes is notice, either adds or subtracts.

■ One final point. At oral argument before this Court, counsel stipulated into the record the letter which had been sent by the trial judge to counsel for the Mathesons. As noted earlier, the letter stated the court's one sentence decision on the merits, set the damages, and requested winning counsel to ". . . kindly prepare findings of fact and conclusions of law in support of the foregoing decision, together with judgment."

This case presents a classic instance of the type of non-compliance with Rule 52(a),

I.R.C.P., which we recently had occasion to condemn in the case of *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977). Here the trial judge took the case under advisement without comment at the conclusion of the hearing. No memorandum decision was ever entered. Any insight into the court's reasoning has to be found in the single sentence quoted above from the letter to prevailing counsel. Winning counsel, by command of the court, was thus obliged to write a judicial decision to sustain an announced result. Accordingly, counsel drafted 55 Findings of Fact and Conclusions of Law which the trial court adopted verbatim. Losing counsel moved to amend in 34 particulars, but his motion was rejected in a one sentence order of the court.

In *Compton* we strongly suggested that the practice of deciding a case in favor of the plaintiff or the defendant and then having the winning party prepare the findings of fact and conclusions of law, followed by verbatim adoption and signing by the court,

". . . is an abandonment of the duty and the trust that has been placed in the judge by the [Rules of Civil Procedure]. It is a noncompliance with Rule 52 specifically and it betrays the primary purpose of Rule 52—the primary purpose being that the preparation of these findings by the judge shall assist in the adjudication of the lawsuit. . . . When these findings get to the courts of appeals they won't be worth the paper they are written on as far as assisting the court of appeals in determining why the judge decided the case." *Compton v. Gilmore,* 98 Idaho 194, 560 P.2d at 865 (1977) quoting from *United States v. El Paso Natural Gas Company,* 376 U.S. 651, 656, n.4, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

We note that the practice followed in this case predated by some time our admonition in *Compton.*

The judgment of the district court is reversed, and the cause remanded with direction to enter judgment for the defendants. Costs to appellants.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.

ON PETITION FOR REHEARING

PER CURIAM:

The petition for rehearing in the above entitled action was granted and reargued. The Court has reviewed the record, considered the arguments presented by counsel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinions.