816 P.2d 326

Lionel RODRIGUEZ, Plaintiff-Intervenor–Respondent,

and

Idaho Quartzite Corporation, an Idaho Corporation, Plaintiff,

v.

OAKLEY VALLEY STONE, INC.; James C. Burch; Elsie LaRue Burch, Defendants–Appellants,

and

Freeman Whittle; Freeman Whittle Quarries, Inc.; Elden W. Whittle; and Elsie Whittle, Defendants.

No. 18600.

Supreme Court of Idaho, Twin Falls, March 1991 Term.

Aug. 6, 1991.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for defendants-appellants. Lloyd J. Webb, argued.

Marcus, Merrick & Montgomery, Boise, for plaintiff-intervenor-respondent. Barry L. Marcus, argued.

BOYLE, Justice.

In this appeal from a judgment of the district court quieting title to mining properties in respondent Lionel Rodriguez (designated plaintiff-intervenor in the district court), we are called upon to determine whether respondent was properly allowed into the action as a party plaintiff in an adverse claim procedure initiated under 30 U.S.C. §§ 29, 30 by a third party, Idaho Quartzite Corporation (designated plaintiff in the district court). Because the record is unclear on the preliminary procedural question of whether substitution under I.R.C.P. 25(c) or intervention under one of the subparts of I.R.C.P. 24 was ordered by the district court, we remand for clarification.

## I.

### FACTS AND PROCEEDINGS

On the west side of Middle South Mountain, situated south of Oakley in the southern part of Cassia County, Idaho, are located substantial deposits of quartzite stone utilized for building and ornamental purposes, and generally characterized as "Oakley Stone." In 1954, Elden Whittle and his brother, Freeman Whittle, entered upon public lands owned by the United States for the purpose of mining the quartzite deposits there. The brothers ultimately divided their mining claims, Elden taking those on the east which are designated the "Rock Garden Quarry Claims" (hereinafter "Rock Garden" claims) and Freeman taking those on the west which are designated

the "Freeman Whittle" claims. These Rock Garden and Freeman Whittle claims share a common boundary described in the district court's findings of fact which is the subject of this dispute. Elden later received title to the Freeman Whittle claims in a mortgage foreclosure judgment against his brother Freeman and others giving him the mining claims on both sides of the now disputed boundary.

In 1978 Lionel Rodriguez entered into an installment real estate purchase contract, accompanied by an executed warranty deed, with Elden Whittle and his wife, Elsie Whittle, as sellers, for the purchase of certain Rock Garden claims. These claims included those sharing the common boundary with the Freeman Whittle claims. All payments have been made under the terms of the contract and final payment was tendered during the pendency of the district court proceedings. Pursuant to the district court's order of January 22, 1990, the tender has been accepted by the Whittles and the deed has been delivered to Rodriguez.

Contemporaneously with the negotiation of the contract between Rodriguez and Elden and Elsie Whittle, Rodriguez leased the Rock Garden claims to John E. Hurley, Jr. and entered into a quarrying contract with Idaho Quartzite Flagstone Company, the predecessor in interest to Idaho Quartzite Corporation (hereinafter collectively referred to as "Idaho Quartzite"). Later, Hurley assigned his interest in the lease to Idaho Quartzite. The lease and quarrying contract were structured to provide the funds necessary to pay the purchase contract between Rodriguez and the Whittles. Because of the close relationship between Rodriguez and Idaho Quartzite, Idaho

Quartzite at one time asserted that it held an interest in the Rock Garden claims in its own capacity through a joint venture or partnership arrangement with Rodriguez. However, after examining the transactions between Idaho Quartzite and Rodriguez, the district court concluded that Idaho Quartzite's interest was related solely to its lease with Rodriguez and that no joint venture or partnership was created.

Oakley Valley Stone, Inc. (hereinafter "Oakley Valley"), is an Idaho corporation and has conducted the quarrying operations of Oakley Stone since 1956. In November, 1984, James C. Burch, an officer of Oakley Valley, and the son-in-law of Elden and Elsie Whittle, executed a quitclaim deed for certain Freeman Whittle claims and the disputed Rock Garden claims to Oakley Valley. In executing this quitclaim deed, Burch ostensibly acted on behalf of his in-laws under a power of attorney recorded the prior year in Cassia County. At the time of this purported conveyance, Oakley Valley was aware of the installment purchase contract between Rodriguez and the Whittles.

In late 1984, Burch, as agent for Oakley Valley, executed and filed with the Bureau of Land Management (hereinafter "BLM"), four placer mining location notices purporting to alter the boundary line of the Rock Garden claims in dispute and to include this area as part of the Freeman Whittle claims. In addition, on December 13, 1984, Oakley Valley filed an application for mineral patent with the BLM to patent certain mining claims situated on the Freeman Whittle claims including the area of dispute.

Idaho Quartzite, filed a timely adverse claim pursuant to 30 U.S.C. §§ 29,[1]

---

**1.** Section 29 provides in part:

A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person, association, or corporation authorized to locate a claim ... may file in the proper land office an application for a patent ... and shall post a copy of such plat, together with a notice of such application for a patent, in a conspicuous place on the land embraced in such plat previous to the filing of the application for a patent ... and shall file a copy of the notice in such land office, and shall thereupon be entitled to a

patent for the land, in the manner following: The register of the land office, upon the filing of such application, plat, field notes, notices, ... shall publish a notice that such application has been made, for the period of sixty days, in a newspaper to be by him designated as published nearest to such claim; ... If no adverse claim shall have been filed with the register of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon payment to the proper officer of $5 per acre, and that no adverse claim exists;

30 [2] asserting that the patent sought by Oakley Valley conflicted with its leased Rock Garden mining claims. The adverse claim was based not only upon Idaho Quartzite's interest under the lease, but also upon the assertion that Idaho Quartzite's predecessors in interest were partners with Rodriguez under the installment purchase contract. Both of these adverse claims depended upon the validity of the installment contract between Rodriguez and the Whittles to give them rights superior to the claims of Oakley Valley under the quitclaim deed. Rodriguez, however, did not file an adverse claim to Oakley Valley's notice and patent application as contemplated by 30 U.S.C. §§ 29, 30.

On August 2, 1985, Idaho Quartzite filed suit in the district court to quiet title. Oakley Valley filed its answer and a counterclaim alleging ownership of the disputed boundary of the mining claims at issue. During the pendency of the suit, Idaho Quartzite and Rodriguez entered into two written agreements that are important to the resolution of this case. The first agreement conveyed to Rodriguez all of Idaho Quartzite's interest in the adverse claim proceeding with the BLM. In addition, this agreement provided for

> the *substitution* of [Rodriguez] in any current or future litigation brought pur-

suant to such Adverse Claim, to the extent such litigation involves the Rock Garden Quarry claims. *Substitution* shall be effected by entry of [Rodriguez] into existing litigation as an *intervenor or by amendment of a pleading* if appropriate and permitted.... Such *substitution* shall also be applicable to any and all proceedings before the U.S. Department of Interior brought pursuant to such Adverse Claim....

R., Vol.I, p. 108. (Emphasis added.) The second agreement entered into between Idaho Quartzite and Rodriguez conveyed all of Idaho Quartzite's asserted ownership interest in the Rock Garden claims to Rodriguez.[3] Thus, as a result of these agreements, Idaho Quartzite relinquished all of its asserted interest in the Rock Garden claims as owners and agreed to the substitution of Rodriguez in the adverse claim action brought before the BLM and in the pending district court proceeding.

Shortly after the execution of these agreements, Rodriguez petitioned the district court for permission to join as a party plaintiff under the substitution provisions of Rule 25(c), or in the alternative, to intervene under Rule 24. After hearing oral arguments on this motion, the district court entered an "[o]rder permitting interven-

---

and thereafter no objection from third parties to the issuance of a patent shall be heard except it be shown that the applicant has failed to comply with the terms of [various sections of the 30 U.S.C. and 43 U.S.C.] ...
30 U.S.C. § 29 (1988). (Emphasis added.)

2. Section 30 provides in part:
Where an adverse claim is filed during the period of publication, ... It shall be the duty of adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim ...
30 U.S.C. § 30 (1988).

3. The agreement provided *inter alia* that,
WHEREAS, Idaho Quartzite by resolution of its board of directors dated 17 February 1986 has determined that for business reasons it has no plans, nor intends to develop any such plans, to pursue whatever action as may be necessary to affirm and defend its eq-

uitable interest in [the Rock Garden] mining claims; and
WHEREAS, Lionel Rodriguez is the named purchaser of these mining claims under the purchase contract with the Whittles, and that the terms of such contract have been complied with and the contract is in good standing.
THEREFORE, ... the parties agree as follows:
1. Idaho Quartzite hereby grants, conveys and assigns to [Rodriguez] all of its right, title and interest in and to the [Rock Garden] claims....
2. [Idaho Quartzite] agree[s] to forever refrain from making any attempts to collect from [Rodriguez] any moneys, or other property in lieu thereof, as compensation for the value of their interest, whatever that may have been, in the equitable ownership of the contract for purchase of the [Rock Garden] claims. [Idaho Quartzite] hereby then forfeit[s] and forget[s] all of such interest, again whatever that may have been.
R., Vol. I, pp. 110–11.

tion" on January 19, 1987. On September 22, 1989, two years after the Rodriguez–Idaho Quartzite substitution agreement documents were signed, Idaho Quartzite's claims against Oakley Valley and Oakley Valley's related counterclaims were dismissed with prejudice according to their stipulation filed with the court on the same date.

After the addition of Rodriguez to the suit, the district court appointed a special master who, after reviewing the documentary evidence submitted by the parties, prepared proposed findings of fact and conclusions of law. These findings and conclusions were substantially adopted by the court with some alterations. An order quieting title in Rodriguez to the disputed boundary area was entered on November 2, 1989. Oakley Valley appeals that order and raises numerous issues with this Court.

## II.

## ISSUES ON APPEAL

A. *Procedure for Permitting Rodriguez to Enter the Suit.*

■ The first issue before this Court is the particular procedure by which Rodriguez was made a party-plaintiff to this case. This issue precedes the main thrust of Oakley Valley's argument which is that Rodriguez lacked standing to assert his rights to the mining claims in dispute in this case due to his failure to comply with the federal requirements for bringing an adverse claim under 30 U.S.C. §§ 29, 30. As a result, Oakley Valley argues that unless Rodriguez was properly allowed into this suit by means of some appropriate

procedural device, the judgment in favor of Rodriguez must fail.

Without deciding this issue, it is clear, as a threshold matter, that the question of whether Rodriguez joined the lawsuit under the substitution provisions of Rule 25(c) may be determinative of the other issues in this case. Oakley Valley appeared to concede in its brief that if Rodriguez were substituted as a party-plaintiff the district court's jurisdiction would be valid.[4] Thus, while the parties may amplify and refine their arguments and positions disputing the effects of a substitution should the district court on remand clarify that this was the procedure it intended, this illustrates the distinct analysis applicable to substitution and intervention.

In considering "[t]he motion of Lionel Rodriguez for joinder as party plaintiff or, in the alternative, for permission to intervene" the district court was not clear what rule of procedure it was invoking to allow Rodriguez into the suit. After extensively reviewing the record, it is clear that the district court wanted to allow Rodriguez into the suit and attempted to avoid a procedural mistake in the process. In addressing counsel on Rodriguez's motion, the district court stated:

> Gentlemen, I think the critical thing here is the court, I feel, has an obligation to see that *substantial justice* is done, and I hear a plea here that … because of [30 U.S.C. §§ 29, 30] there may be a prejudice [to] Mr. Rodriguez if he is not *joined* in this lawsuit.
>
> ....
>
> I'm going to *join* him at this time. I'm going to get this issue behind us, okay? We're going to *join* him. We're not going to wait for more briefs and so forth.

App.Br., p. 18. (Emphasis added.) Further, Oakley Valley argued:

> There is nothing in the case which suggests that someone who is a stranger to the objection process is permitted to come into the litigation (*absent consent to joinder*) simply on account of the fact that an adverse claim was filed by someone else.

*Id.* at 19–20. (Emphasis added.)

---

4. In its brief, Oakley Valley stated:

The lower court in this matter permitted Rodriguez to "bootstrap" himself into standing, where he had no standing, on the strength of Idaho Quartzite's timely objection and timely commencement of action. The law does not permit this. The law is that an intervenor stands on the strength of his own filing date *in intervention,* not on the strength of the original complaint filing date, *unless we are involved with what is essentially a substitution of the parties. ...*

We're going to *join* him on the limited issue of quiet title. If we can sever this or whatever, then we may do that. *But I'm not going to prejudice his rights permanently in this thing by simply making a procedural mistake here....*

Tr., pp. 6, 8. (Emphasis added.)

While the above passage from the record would seem to indicate that the district court intended to *join* Rodriguez under the substitution provisions of I.R.C.P. 25(c),[5] the court also referred extensively to making allowance for Rodriguez to *intervene* in the suit. Without ever expressly indicating on which portion of Rodriguez's alternative motion the court intended to rely or the rule of procedure relied upon, the court instructed counsel for Rodriguez to prepare an order and state that "because there's a possibility of substantial prejudice to Mr. Rodriguez, he'll be allowed to *intervene* so we can have the record clear of the court's ruling on this matter." Tr., p. 10.

We have often discouraged the practice of trial courts requesting counsel to prepare its findings of fact and conclusions of law, not only because of the possibility of error or embellishment, but because this practice takes away from the court's clear articulation of its actual intent. *Cheney v. Jemmett*, 107 Idaho 829, 693 P.2d 1031 (1984); *Marshall Bros., Inc. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978); *Matheson v. Harris*, 98 Idaho 758, 572 P.2d 861 (1977); *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977); *see also Roberts v. Swim*, 117 Idaho 9, 784 P.2d 339 (Ct.App. 1989); *Roeh v. Roeh*, 113 Idaho 557, 746 P.2d 1016 (Ct.App.1987); *Seaport Citizens Bank v. Dippel*, 112 Idaho 736, 735 P.2d 1047 (Ct.App.1987); *M H & H Implement, Inc. v. Massey–Ferguson, Inc.*, 108 Idaho 879, 702 P.2d 917 (Ct.App.1985). As we noted in our decision in *Compton,* the purpose of the written expressions of a judge is so that

he himself may be satisfied that he has dealt fully and properly with all the issues in the case before he decides it and so that the parties involved and this court on appeal may be fully informed as to the bases of his decision when it is made.

98 Idaho at 194, 560 P.2d at 865 (*quoting Roberts v. Ross,* 344 F.2d 747, 751 (3d Cir.1965)).

While in this case the concern is with an order, rather than findings of fact or conclusions of law, that was prepared by counsel and adopted by the court, the same concerns articulated in *Compton* apply in this instant case because of the conflict between the oral pronouncement and the written order subsequently entered. *Cf. Witt v. Jones,* 111 Idaho 165, 722 P.2d 474, 486–87 (1986). Thus, while the order in this case is styled an Order Permitting Intervention which allowed Rodriguez "to *intervene* as a party plaintiff," we decline, in light of the conflict in the record, to construe this order in and of itself as resolving the question of whether substitution or intervention was intended by the district court. While this factor alone is not dispositive, in another context we recently held that where a written and oral order are potentially contradictory, the oral order will be given precedence. *Peltier v. State,* 119 Idaho 454, 808 P.2d 373 (1991); *see also State v. Phillips,* 99 Idaho 354, 581 P.2d 1173 (1978). Here the oral order which specified joinder potentially contradicts the written order prepared by counsel.[6] We, therefore, without further clarifi-

5. Rule 25(c) automatically provides a substitution when there has been a transfer of interest without any action by the court if the original party remains in the lawsuit. However, if the original party wishes to be dismissed, the court must order the transferee *substituted or joined.* The rule states:

Rule 25(c). Transfer of interest.—In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred *to be* substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule. (Emphasis added.)

Joinder should be accomplished under the applicable joinder provisions of the Idaho Rules of Civil Procedure.

6. We do not find an indication of substitution solely on the basis of the oral order, however, because the oral pronouncements are likewise ambiguous and subject to differing interpretation. As noted above, the oral pronouncement

cation, decline to give the written order preference over the oral pronouncement of the district judge.

Moreover, the written order itself is not clear as to whether intervention or substitution was intended. Even assuming the written order accurately reflected the court's intentions it would still be unclear as an order for intervention because it did not indicate whether the court was admitting Rodriguez under Rule 24(a), intervention as of right, or under Rule 24(b), permissive intervention. Even more importantly, aside from its labels, the order itself is not wholly consistent with intervention. The rationale stated in the order admitting Rodriguez into the suit is equally applicable to an interpretation as intervention as of right under Rule 24(a) or to joinder under Rule 19(a)(1), which is potentially applicable in the instant appeal because the provisions of Rule 25(c) permit substitution by joinder. The district court's written order stated: "It appears from the proposed verified Complaint in Intervention, and documents attached thereto, that Mr. Rodriguez has an *interest in said mining claims and that his ability to protect that interest may, as a practical matter, be impaired or impeded by the disposition of this case.*" R., Vol. I, p. 151. (Emphasis added.) In pertinent part, Rule 24(a) states:

> **Rule 24(a). Intervention of right.—** Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an *interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest,* unless the applicant's interest is adequately represented by existing parties. (Emphasis added.)

These same factors are relevant under I.R.C.P. 19(a)(1) which provides:

> **Rule 19(a)(1). Persons to be joined if feasible.**—A person who is subject to ser-

vice of process shall be joined as a party in the action if ... *he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest....*

I.R.C.P. 19(a)(1). (Emphasis added.) Therefore, the language and rationale of the order could apply to either substitution or intervention.

Not only does the order's written language and rationale not squarely support the order's intervention label, the court's oral pronouncement and rationale conflicts with the requirements for intervention because both intervention as of right and permissive intervention require timeliness as a condition precedent to intervention. Nevertheless, in its directions to counsel, the court stated: "Mr. Marcus, I want you to prepare an Order. *I want that Order to specifically say the court finds the request was untimely....*" Tr., p. 10. Therefore, the order cannot be premised entirely on intervention and simultaneously be founded on a finding that the intervention request was untimely. Substitution, in contrast, may be allowed at any time during the course of litigation, even "after judgment or, pending appeal, by the Supreme Court." I.R.C.P. 25(e).

In reviewing the remainder of the record in an attempt to clarify the intent of the court we are also presented with a number of other conflicting factors. Throughout the record, and in the headings of the pleadings to the case, Rodriguez is consistently referred to as the "plaintiff-*intervenor,*" and his complaint is styled a "complaint in *intervention.*" However, recourse to these labels is not dispositive. Shortly after Rodriguez was allowed into the case, he filed his first amended complaint. In that complaint Rodriguez was simply referred to as the "plaintiff" without mentioning Idaho Quartzite. The omission of Idaho Quartzite from the pleading with a reference to Rodriguez as the plain-

---

of the district court alternately refers to joinder and intervention as the means for admitting

Rodriguez into the suit.

tiff could be interpreted as a reference more indicative of substitution than intervention.[7] But, in an answer filed by Idaho Quartzite, the original plaintiff, it is stated:

> Plaintiff [Idaho Quartzite] does not take issue, and in most all instances concurs, with the allegations raised by Intervenor in the amended complaint except.... [p]laintiff Idaho Quartzite Corporation believes that Intervenor should not be referred to or characterized as "Plaintiff" in this or any subsequent pleadings.... While Idaho Quartzite corporation and Lionel Rodriguez share a common issue at law and seek similar relief, the property interests at stake are distinctly separate. Furthermore, while many of the facts involved are shared, many are unique. Hence, the interests of the plaintiff persons are not identical. *For clarity in the proceedings, they should be referred to in their individual capacities* as "Plaintiff" and "Plaintiff–Intervenor" (or "Intervenor" unless a future ambiguity should arise).

R., Vol. I., pp. 169–70. (Emphasis added.) Therefore, the labels used subsequent to Rodriguez's initial pleading could merely have been intended for clarity purposes rather than as determinative of the procedural device by which Rodriguez entered into the case. For all of the reasons noted above, we conclude that the written order is ambiguous and does not clearly indicate whether the court intended to permit Rodriguez into the suit by way of intervention or substitution. We therefore decline to make the labels of the pleadings determinative of the court's intent in allowing Rodriguez into the action and leave it to the district court on remand to determine and precisely state what procedure was intended in joining Rodriguez in the proceedings.

It is well established that the determination to allow substitution or permissive intervention is discretionary with the district court.[8] Moreover, intervention as of right has been considered to be a mixed question of law and fact involving the discretion of a trial judge.[9] Accordingly, we hold that it is necessary for a trial court to determine by what procedure a party entering a suit is admitted before the propriety of that procedure may be determined. Therefore, because the record does not clearly reflect by what procedure the district court allowed Rodriguez to enter the suit, we remand to allow the district court to clarify and make this threshold determination.

## B.  *Acceptance of the Master's Findings of Fact and Conclusions of Law.*

▄▄▄▄ Oakley Valley contends that the district court's adoption of the findings of fact and conclusions of law prepared by the special master constitutes reversible error. We disagree. In guiding the courts on the use of special masters, I.R.C.P. 53(e)(1) states that "if required to make findings of fact and conclusions of law, [the special master] shall set them forth in [his] report, separately stated." With respect to findings of fact, I.R.C.P. 53(e)(2) continues: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." While Rule 53(e)(2) requires the court to carefully con-

---

7.  While again it is unclear, it may be that as a result of the Rodriguez–Idaho Quartzite substitution agreement of November 28, 1986, Rodriguez assumed that he had been fully substituted as to all issues in the suit. Whether or not Rodriguez was substituted for Idaho Quartzite is, of course, an issue to be determined by the district court on remand.

8.  7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1917 at 355, 553–61 (1986).

9.  The Supreme Court of Wyoming stated:
> It has been suggested that an issue involving intervention of right under Rule 24(a) is a question of law. 7A Wright & Miller, *Federal Practice and Procedure* § 1902, p. 466 (1972). It cannot be denied, however, that the resolution of a right-to-intervene problem also involves a question of fact. Therefore, a Rule 24(a)(2) claim should be viewed as one involving a question of law and fact. *Llewellyn v. Beasley,* supra, 415 N.E.2d [789] at 792 [(Ind. App.1981)]. From this it follows that under Rule 24(a) there is an element of discretion which attaches to a trial judge's decision to refuse or allow intervention.

*Platte County v. Basin Elec. Power Co-op.,* 638 P.2d 1276, 1278 (Wyo.1982); *see also* Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev., pp. 721, 757–764 (1968).

sider any objections by the parties to the master's report, there is nothing in Rule 53 which precludes the court from adopting the master's factual findings verbatim if not clearly erroneous. Because the court is required to make its own careful review to determine if the findings of fact are clearly erroneous, this procedure is consistent with the court's duty under I.R.C.P. 52.

Unlike the master's findings of fact, Rule 53 does not require the court to adopt the master's proposed conclusions of law. However, the Court of Appeals erred when it held that these conclusions have no weight with the trial court. *See Seccombe v. Weeks,* 115 Idaho 433, 767 P.2d 276 (Ct. App.1989). While the master's proposed conclusions of law are not binding on the district court, they are intended to be persuasive. A court is free to adopt the master's proposed conclusions of law if they correctly state the law. Nothing in our cases on these matters is contrary. *See Cheney v. Jemmett,* 107 Idaho 829, 693 P.2d 1031 (1984); *Marshall Bros., Inc. v. Geisler,* 99 Idaho 734, 588 P.2d 933 (1978); *Matheson v. Harris,* 98 Idaho 758, 572 P.2d 861 (1977); *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977); *Morton v. Morton Realty Co.,* 41 Idaho 729, 241 P. 1014 (1925).

Oakley Valley does not contend that the master's findings of fact are clearly erroneous but rather argues that there was insufficient evidence that the court independently reviewed the record to make a determination regarding the correctness of the master's findings. However, the court indicated that he reviewed "the documents, affidavits and other papers" prior to accepting the findings of fact. Moreover, the court heard objections to the findings and made a number of corrections and changes to the master's report as a result. Accord-

ingly, after a careful review of the record, we conclude that there is ample evidence that the court performed an adequate and careful review prior to accepting the master's findings of fact.

With regard to the conclusions of law, while there is no error per se in accepting the conclusions of the master, we observe and note that the district court made significant changes in the master's conclusions of law. Therefore, we find no error in the district court's manner of accepting these conclusions.

### C. *Dismissal of Idaho Quartzite and the Standing of Rodriguez.*

Finally, Oakley Valley argues at length that the dismissal of Idaho Quartzite with prejudice from the lawsuit left Rodriguez without standing under the federal laws since the party in compliance was no longer a party to the suit. However, this argument is premised on the assumption that Rodriguez had entered the suit by way of intervention rather than substitution. While we do not determine here, due to the state of the record, the difficult question of whether Rodriguez's interests in the suit would be foreclosed because he intervened under Rule 24 and Idaho Quartzite was subsequently dismissed,[10] we note that the dismissal of the original party in a substitution process is contemplated by Rule 25(c). Accordingly, as stated in section A above, we remand to the district court for clarification of this issue.

### III.

### ORDER AND INSTRUCTIONS ON REMAND

After extensively reviewing the record of the district court proceedings and because

---

**10.** One commentator has stated with regard to the analogous federal rules of civil procedure on intervention:

[I]f there is an independent basis for jurisdiction with regard to the intervenor the court has discretion to treat his pleading as a separate action in order to adjudicate the claims raised by him.

The more important—and infinitely more difficult—question is whether, if the court has

proper jurisdiction of the original action, it may allow an intervenor to come in and present a claim or defense although there would be no basis for federal jurisdiction if the intervenor were suing or being sued by himself.

7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1917 at 458–59 (2d ed.1986). (Footnote omitted.) *See also Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52 (5th Cir.1970).

the resolution of this question is crucial to the determination of this appeal, we remand to the district court for a determination of whether its order allowing or joining Rodriguez into the suit was intended as a substitution or intervention. We do not determine here whether either procedural device will be dispositive of the other issues presented in this appeal and in light of our ruling it is not necessary to address the other issues. Accordingly, we remand to the district court to reconcile the conflicting aspects of the record and to issue a decision stating whether Rodriguez was intended to be allowed into the action as a substituted party under Rule 25(c) or under Rule 24 as an intervenor, and the consequences of that procedural determination.

Costs to appellants. No fees allowed on appeal.

BAKES, C.J., and BISTLINE, JOHNSON and McDEVITT, JJ. concur.