20 P.3d 693

**In re SRBA Case No. 39576, Subcase Nos. 34–00600 and 34–00606.**

**John McCRAY and Matea McCray, husband and wife, Appellants,**

v.

**Doug ROSENKRANCE, Shane Rosenkrance and James C. Lambert, Respondents.**

**No. 25905.**

Supreme Court of Idaho,
Twin Falls, November 2000 Term.

Jan. 24, 2001.

Rehearing Denied April 3, 2001.

Ling & Robinson, Rupert, for appellants. Roger D. Ling argued.

Patrick D. Brown, P.C., Jerome, for respondents.

KIDWELL, Justice.

This appeal is from an order of the SRBA district court, adopting the recommendation of a special master in its entirety. The special master's recommendation concluded that the majority of water rights 34–00600 and 34–000606 had been abandoned and/or forfeited due to non-use for the statutory period.

## I.

### FACTS AND PROCEDURAL BACKGROUND

*A. Facts*

Water rights 34–00600 and 34–00606 are appurtenant to real property previously owned and farmed by Gerald "Doug" Storer. Storer farmed the property (Storer property) between 1973 and 1984. The source of the water rights is Alder Creek, which is a tributary to the Big Lost River. The water rights had a priority date of September 2, 1882.

Storer testified that in 1976, he made the transition from irrigating from Alder Creek to irrigating by sprinkler. He purchased an irrigation system and drilled a well in the northeastern portion of the property. Dur-

ing this conversion, Storer also plowed in all the ditches on the eastern portion of the property, except one. The west side of the property was irrigated by sprinkler from the time Storer began farming it in 1973 until the last time he irrigated the property in 1984.

On October 5, 1984, Storer transferred ownership of the property, along with all the appurtenant water rights, to Farmers Home Administration (FHA), as satisfaction of mortgages held by FHA on the property. In 1985, FHA leased the Storer property to Harold Bell who irrigated the property during that one-year lease. The property was then leased to Don Palmer and Randy Pehrson during 1986 and 1987. Palmer and Pehrson testified that they did not irrigate the property during this time. The special master found that the property was not irrigated during 1988.

From 1989 to 1990, the Storer property was leased to Richard Reynolds. Reynolds testified that the farm was not irrigated in 1989, and only for a few weeks in 1990. During this time, the irrigation was accomplished through the irrigation ditches on the property. Reynolds was not able to irrigate the entire property due to a combination of there not being enough water and because the equipment for irrigation was not in working order. The special master determined that Reynolds was able to irrigate 25 acres of the property with the water from Alder Creek in 1990. When asked, Reynolds admitted that if there had been more water in Alder Creek, he could have irrigated more of the property.

The 1990 irrigation of the property by Reynolds was terminated when the watermaster, Doug Rosenkrance, diverted the Alder Creek water above the Storer property onto his own property. When asked why the water had been diverted, Rosenkrance told Reynolds that "there wasn't any more, that the water right was off."

In response to claims filed with the SRBA, senior water agent Carter Fritschle investigated the water rights on behalf of the Idaho Department of Water Resources (IDWR) in August of 1990. Fritschle testified that "the ditch—there wasn't a lot left to it. It was mainly almost a depression in most places rather than actually identifiable as a ditch." He also indicated that the hand lines on the property did not look like they had been used recently. They appeared to be "broken or bent, and weren't connected to any of the risers or anything."

In 1991 and 1992, the property was leased to Shane Rosenkrance, son of Doug Rosenkrance. During this lease, Shane used Alder Creek water on his own land rather than on the Storer property.

The United States sold the property by a sealed bid auction in 1995. The first advertisement for the sale did not mention water rights. However, the second ad expressly stated that the irrigation equipment was to be sold with the property and the property contained no appurtenant water rights. Appellants, John and Matea McCray, along with Tai Fei Pao and Jenn–Hai Pao, submitted a bid, which listed the property as "635 acres of dry grazing and irrigation equipment." Shane Rosenkrance also submitted a bid for the property.

The McCrays' bid was accepted and the property was conveyed to the McCrays and the Paos in June of 1995. In October of 1996, the Paos transferred their interest in the property to the McCrays.

*B. Procedure*

On May 27, 1992, a director's report was filed, recommending that water rights 34–00600 and 34–00606 be disallowed on the basis of abandonment and/or forfeiture. On February 26, 1993, the United States, through the FHA filed objections to the director's report. On November 4, 1993, SRBA District Court Judge Daniel Hurlbutt entered an order appointing Brigette Bilyeu as a special master for Reporting Area 34.

Prior to any hearings on the objections, the property was sold to the McCrays in 1995. On June 30, 1995, the United States, through FHA, agreed to allow the McCrays to take its place in the subcases. On June 26, 1997, the special master granted a motion to allow Shane Rosenkrance, Doug Rosenkrance, Carroll Palmer and James Lambert (upstream water users) to participate in the subcases.

The McCrays filed a motion for summary judgment on September 15, 1997, arguing that the property had been irrigated in 1985 and 1990 and thus had neither been abandoned nor forfeited. The special master denied the motion and set the matter for a bench trial. The trial commenced on November 12, 1997. On February 12, 1998, the special master entered her findings of fact and conclusions of law.

In her memorandum, the special master ·set out that the director's report was to be given prima facie weight as to the issues. The special master then determined that the water rights on the eastern portion of the property had been abandoned when Storer filled in the ditches and installed the sprinkler system and the well. Additionally, the special master held that the water rights for the entire property had been forfeited due to nonuse, excluding the 25–acre portion irrigated in 1990. Finally, the special master held that Shane Rosenkrance's use of water from Alder Creek in 1991 and 1992, on his own property did not constitute resumption of the water rights on the Storer property.

On February 27, 1998, the special master entered an amended report and recommendation, amending only the legal description of the property. The McCrays filed their notice of challenge of the special master's findings of fact and conclusions of law on June 24, 1998. On December 22, 1998, the SRBA district court entered its memorandum decision on the McCrays' challenge. In its two-page memo, the court adopted the recommendation of the special master in its entirety. The McCrays filed their notice of appeal on September 17, 1999.

## II.

## STANDARD OF REVIEW

 The special master's findings of fact, which are adopted by the district court, are considered to be the findings of the district court. I.R.C.P. 52(a); *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 736, 740, 947 P.2d 409, 413 (1997). "In an action to be tried without a jury the court shall accept the master's findings of fact unless they are clearly erroneous." I.R.C.P.

53(e)(2). "The special master's conclusions of law are not binding upon the district court, although they are expected to be persuasive." *Hagerman Water Right Owners, Inc.*, 130 Idaho at 740, 947 P.2d at 413. The special master's conclusions of law which are adopted by the district court are treated as the conclusions of the district court. *Id.* This Court freely reviews the district court's conclusions of law. *Id.*

## III.

## ANALYSIS

**A. The District Court And The Special Master Based Their Decisions On The Facts Of The Dispute, And Did Not Rely On The Prima Facie Status Of The Director's Report.**

 The McCrays argue that the district court erred in finding that the special master correctly gave prima facie weight to the director's report. They claim that while the director's report normally creates a rebuttable presumption, in this case the McCrays provided evidence to overcome the presumption and thus the director's report should be weighed as ordinary evidence without any presumptions.

The issue of the weight to be given a director's report is discussed in Idaho Code section 42–1411(4) which provides:

(4) The director shall file the director's report with the district court, and the director's report shall be a part of the record. Upon filing with the court, the director's report, except for the explanatory material referred to in subsection (1) of this section, *shall constitute prima facie evidence of the nature and extent of the water rights* acquired under state law. The unobjected to portions of the director's report shall be decreed as reported.

I.C. § 42–1411(4) (emphasis added).

Additionally, the Code provides that:

Each claimant of a water right acquired under state law has the ultimate burden of persuasion for each element of a water right. Since the director's report is prima facie evidence of the nature and extent of the water rights acquired under state law,

**514**

a claimant of a water right acquired under state law has the burden of going forward with the evidence to establish any element of a water right which is in addition to or inconsistent with the description in a director's report. Any party filing an objection to any portion of the director's report shall have the burden of going forward with the evidence to rebut the director's report as to all issues raised by the objection. Any other party to the proceeding may submit evidence in opposition to the objector's position and in support of the director's report. All such proceedings shall be governed by the Idaho rules of civil procedure and Idaho rules of evidence.

I.C. § 42–1411(5).

 This Court has considered the weight and effect of a director's report. *Hagerman Water Right Owners, Inc.,* 130 Idaho at 736, 947 P.2d at 409 (1997). In *Hagerman,* the claimants objected to the director's recommendation that the water rights consist of a lesser amount than that claimed. *Id.* at 738, 947 P.2d at 411. The Court explained that the prima facie status contained in section 42–1411 "constituted a rebuttable evidentiary presumption." *Id.* at 745, 947 P.2d at 418. The Court then noted that I.R.E. 301 governs presumptions in civil cases. *Id.* The Court then reasoned that "when an evidentiary presumption arises it shifts only the burden of production. When rebutted, the presumption disappears and the party with the benefit of the presumption retains the burden of persuasion on the issue." *Id.* Furthermore, "the Director's Report is *prima facie* evidence and the facts contained therein are presumed to be correct until such time as a water claimant produces sufficient evidence to rebut the presumption." *Id.* "Once the presumption is rebutted, it disappears and the facts upon which the presumption is based are weighed with all other facts that may be relevant." *Id.* at 746, 947 P.2d at 419.

In the present case, the McCrays argue that the presumption normally granted to the director's report should have been disallowed in this case because the McCrays provided substantial evidence to rebut the presumption. Specifically, they point to Special Agent Carter Fritschle's testimony that the forfeiture/abandonment was recommended because of non-use beginning in 1982, which is inconsistent with the findings of the special master that the property was irrigated in 1985. The McCrays then argue that this fact should have rebutted the presumption that the director's report was correct, and the special master should have relied on the common law to resolve the issue of forfeiture/abandonment, rather than on the presumption.

It appears, however, that the McCrays' argument is misplaced. The special master's report and recommendation indicates that, although the special master was aware of the prima facie status of the director's report, the special master actually made her decision based on the facts of the case rather than relying on the statutory presumption of the director's report.

For example, after setting out the facts of the case, the special master analyzed the abandonment issue by applying the facts pursuant to common law. The special master set out the relevant law and then found that the actions of Gerald Storer constituted abandonment when he filled in his ditches, drilled a well and purchased the sprinkler system. The special master specifically stated that she found "clear and convincing evidence" to support her determination.

The special master then set out the requirements for statutory forfeiture. She found that the majority of the property had not been irrigated for more than five consecutive years, which resulted in a forfeiture under I.C. § 42–222(2).

Therefore, from the record we conclude that the special master did not rely upon the prima facie status of the director's report. Rather, the record indicates that she based her conclusions of forfeiture and abandonment on the facts of the case as applied to both statutory and common law.

**B. The Special Master Correctly Applied A Clear And Convincing Standard Of Proof.[1]**

The McCrays contend that the special master and the district court erred in finding a forfeiture in the absence of clear and convincing evidence. They maintain that the evidence does not establish a lack of use for the required statutory period.

■ Forfeiture of water rights is governed by Idaho Code section 42–222(2), which provides that water rights may be lost if they are not applied to the beneficial use for which the rights were appropriated for five continuous years. I.C. § 42–222(2). However, this Court has often repeated its position that forfeiture of water rights is not favored in Idaho. *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 87, 982 P.2d 917, 922 (1999). Because of its disfavor for water right forfeiture, Idaho law requires that such actions be proved by the heightened evidentiary standard of clear and convincing evidence. *Id.*

■ Here, the special master found by clear and convincing evidence that the water rights had been abandoned and/or forfeited. This finding must then be accepted by the trial court "unless clearly erroneous." I.R.C.P. 53(e)(2). To determine whether the special master's findings are clearly erroneous, "the trial court must independently review the evidence to determine whether the findings were supported by substantial evidence." *Seccombe v. Weeks*, 115 Idaho 433, 435, 767 P.2d 276, 278 (Ct.App.1989). On appeal from decisions of the district court, this Court again applies a substantial and competent evidence standard. *Jenkins v. State, Dep't of Water Resources*, 103 Idaho 384, 389, 647 P.2d 1256, 1261 (1982).

■ Thus, the McCrays are correct that the proper standard of proof required to find a forfeiture of a water right by finder of fact is clear and convincing evidence. However, the district court is correct that once the special master has determined that the for-feiture is supported by clear and convincing evidence, that decision is reviewed by the district court and by this Court under the substantial and competent evidence standard.

**C. The Special Master Made Sufficient Findings To Support The Conclusions Of The District Court.**

Here, the McCrays take issue with the summary manner in which the district court adopted the findings of fact and conclusions of law and recommendation of the special master. Specifically, they argue that the district court committed reversible error when it failed to "set forth separately its Findings of Fact and Conclusions of Law."

To assist in the adjudication of water rights, the "district court may appoint one (1) or more special masters in any general adjudication. . . . Objections to and hearing on the special master's report shall be governed by rule 53(e) of the Idaho rules of civil procedure." I.C. 42–1422. Rule 53(e)(2) provides that "In an action to be tried without a jury the court shall accept the master's findings of fact unless they are clearly erroneous." *Id.*

■ This Court has held that "there is nothing in Rule 53 which precludes the court from adopting the master's factual findings verbatim if not clearly erroneous." *Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 378, 816 P.2d 326, 334 (1991). This is "[b]ecause the court is required to make its own careful review to determine if the findings of fact are clearly erroneous, [thus] this procedure is consistent with the court's duty under I.R.C.P. 52." *Id.*

In *Rodriguez*, the Court found that the district court had made a sufficient review of the record when the district court "indicated that he reviewed 'the documents, affidavits and other papers' prior to accepting the findings of fact. Moreover, the court heard objections to the findings and made a number of corrections and changes to the master's report as a result." *Id.*

---

1. It is necessary at this point to distinguish the present issue from issue E below. In the present issue, the McCrays are claiming that the special master and the district court applied the wrong standard of proof, i.e. clear and convincing evi-dence. In issue E below, the McCrays argue that the facts do not amount to clear and convincing evidence. Thus, the issue here will be limited to a discussion of the standard of proof required in a water rights forfeiture case.

In the present case, the district court noted that it conducted a "[c]areful review of the record and controlling case law [which] supports the decision of the Special Master." The court also determined that, "On each issue presented, forfeiture, abandonment, and resumption of use, the Special Master's findings of fact are well supported by substantial evidence and therefore, are not clearly erroneous." Thus, while the explanation of the district court as to the basis of its conclusions was not as detailed as those in *Rodriguez*, the court performed a sufficient review of the facts and record prior to adopting the special master's recommendation.

### D. The Issue Of Whether The Statutory Period For Forfeiture Or Abandonment Should Be Tolled By Filing A Claim With The SRBA District Court Was Not Properly Preserved For Appeal.

In this section, the McCrays urge this Court to adopt a new rule of law that would require the five-year statutory period for water rights forfeiture to be tolled by the filing of a claim with the SRBA district court. The respondents counter by pointing out that while the McCrays raised the issue of whether filing an *objection* in the SRBA court should toll the time period, they have not raised the issue as to filing a *claim* prior to this appeal. In the McCrays' reply brief, they concede that the issue of whether the filing of a *claim* with the SRBA court should toll the statutory period was not raised prior to appeal. However, the McCrays contend that this is one of those special circumstances where the Court should consider an issue which was not preserved for appeal.

This Court has consistently held that an issue not raised below will not be considered when raised for the first time on appeal. *Post Falls Trailer Park v. Fredekind*, 131 Idaho 634, 637, 962 P.2d 1018, 1021 (1998). While this Court has, in the past, considered issues raised for the first time on appeal, these cases usually involve a constitutional issue. *See Inama v. Brewer*, 132 Idaho 377, 385, 973 P.2d 148, 156 (1999) ("We will consider constitutional issues raised for the first time on appeal if such consideration is necessary for subsequent proceedings in the case.") (Internal quotations omitted).

The issue the McCrays seek to raise for the first time on appeal is not a constitutional issue; rather, it involves urging this Court to adopt a new rule of law. Therefore, we decline to address the issue.

### E. The McCrays Have Failed To Prove That The Abandonment And/Or Forfeiture Was Caused By Conditions Beyond The Control Of The Water Right Holder.

The McCrays allege that the abandonment and/or forfeiture was caused because Reynolds was not allowed to irrigate the Storer property, although he tried, because of factors beyond his control.

After hearing testimony on the matter, the special master determined that the water rights were forfeited because of nonuse for the five-year statutory period. The five-year period ran from 1985 through 1990. The director's report suggested that all of the water rights had been lost for nonuse during this time. However, the special master determined that during 1990, Reynolds, who was leasing the property at the time, had irrigated 25 acres. Thus, the special master held that all of the water rights were forfeited except for the 25 acres irrigated by Reynolds. The McCrays complain that Reynolds tried to irrigate more than the 25 acres in 1990, but was prevented from doing so because of drought and/or the wrongful actions of the watermaster.

As the McCrays correctly point out, this Court has recognized certain defenses to forfeiture, such as "wrongful interference with a water right or failure to use the water because of circumstances over which the water right holder has no control." *Jenkins*, 103 Idaho at 389, 647 P.2d at 1261.

In *Almo Water Co. v. Darrington*, 95 Idaho 16, 501 P.2d 700 (1972), this Court noted that "Neither would interference by the watermaster in the exercise of a decreed right, by failure to fill that right in accord with the decreed priority, establish grounds for abandonment or forfeiture...." *Id.* at 21, 501

P.2d at 705. *See also Hodges v. Trail Creek Irrigation Co.*, 78 Idaho 10, 16, 297 P.2d 524, 527 (1956).

As set forth above, the special master must find by clear and convincing evidence that the water rights have been forfeited. *Aberdeen–Springfield Canal Co.*, 133 Idaho at 87, 982 P.2d at 922. This Court must then determine whether the special master's conclusion of clear and convincing evidence is supported by substantial and competent evidence. *Jenkins,* 103 Idaho at 389, 647 P.2d at 1261.

Here, the special master stated in her findings of fact that "The irrigation on the property was terminated in 1990 when Alder Creek water was diverted to Doug Rosenkrance's property." The special master based this conclusion on Reynolds' testimony at trial. Specifically, Reynolds testified that his father had begun irrigating the property in 1990 in order to "green it up a little bit here and there...." Reynolds also stated that one day he returned to the property and found that the water was no longer flowing from Alder Creek onto the Storer property, but that it had all been diverted onto property owned by the water master, Doug Rosenkrance. Reynolds stated that when he asked Rosenkrance about the water, Rosenkrance stated that "there wasn't any more, that the water right was off...." Reynolds did not pursue the issue because "we had quite a bit of trouble keeping the cows in and keeping the other cows out. So we just decided it wasn't worth it and took them home."

At trial, counsel for the McCrays asked Rosenkrance why he had terminated the water right on the property. At first, Rosenkrance stated that the director's report had indicated that in 1990 the property did not have a water right. However, when faced with the fact that the director's report had not been issued until 1992, Rosenkrance recanted. He then indicated, "nobody has called for the water right, anyway," and that "number one, there was no call for the water on the Storer place in 1990. And, number two, there hadn't been any assessments paid on the Storer place in 1990." However, Rosenkrance later stated that no assessments had been made on the place and further that

even if Reynolds had asked to pay an assessment for the water rights, Rosenkrance would have been unable to set an amount.

The McCrays assert that Rosenkrance's questionable reasons for terminating the water right defeats the requirement of clear and convincing evidence. They argue that had Rosenkrance not interfered with the 1990 diversion, Reynolds may have been able to irrigate more of the property than only the 25 acres.

However, it appears that the special master considered this argument in her recommendation. In the special master's determination that all but 25 acres had not been irrigated, the special master appeared to rely on the testimony of Reynolds that the property "wasn't set up for gravity irrigation." And that "there may have been enough water [from Alder Creek] if it had been leveled and disked and everything." This testimony appeared to convince the special master that even if Rosenkrance had not terminated the flow to the property, the property still could not have been irrigated because of the lack of ability to water the property.

To bolster this conclusion, the special master considered the testimony of Gerald Storer reliable, that the irrigation ditch being used by Reynolds to irrigate the property could only hold 25 inches of water. The special master also gave weight to the testimony of water agent Fritschle, that during an August 1990 investigation of the water rights, Fritschle did not see any erosion patterns and observed that "ditches were in bad shape in some places, and the property was barely indented where ditches had previously been located."

Therefore, we hold that the special master's conclusion that clear and convincing evidence exists is supported by substantial and competent evidence. The master's finding that the ditch that Reynolds was using could only hold 25 inches of water would further support this conclusion.

## F. The Water Rights Were Not Resumed By Shane Rosenkrance.

The McCrays claim that in 1991 and 1992 Shane Rosenkrance resumed use of the

water rights on the Storer property when, while he was leasing the Storer property, he used water from Alder Creek to irrigate his own property. The McCrays assert that since Shane used more water than he was entitled to during that time, it follows that he must have been using water rights from the subject property. This use, they claim, should result in a finding that the water right was resumed.

While the McCrays argue that there is evidence in the record to support their conclusion that Shane Rosenkrance used more water than he was entitled to while leasing the Storer property, they have failed to argue or provide evidence that any of that water was put to beneficial use anywhere other than on his own property. The McCrays have not challenged the special master's finding that Shane Rosenkrance "did not irrigate the land." It appears, that the McCrays are claiming that Shane resumed use of water right numbers 34–00600 and 34–00606, by changing the place of use from the Storer property to his own property.

This argument, however, is fatally flawed by the fact that Shane never sought to change the place of use of the water right. It has not been alleged that he sought the permission of the water district as required by I.C. § 42–108, or that he made application to change the place of use with the IDWR as required by I.C. § 42–222. Shane testified that he did not irrigate the subject property during his lease. It is clearly the law in Idaho that a water right cannot be resumed when the facts clearly establish that water was not applied to the land of which it was appurtenant.

Therefore, the fact that Shane used more water than he was entitled to appears to be irrelevant since it is undisputed that water was not applied to the Storer property during the time Shane held the lease.

### G. Respondents Are Not Entitled To Attorney Fees On Appeal.

Respondents claim attorney fees and costs on appeal by arguing that the McCrays appeal "was brought, pursued or defended frivolously, unreasonably or without foundation ...." I.R.C.P 54(e)(1). Even though we find in favor of respondents, we are not persuaded that this appeal has been brought "frivolously, unreasonably or without foundation." The McCrays have provided reasonable arguments which were supported by citations to facts and to relevant authority. Therefore, we do not award respondents attorney fees on appeal.

## IV.

## CONCLUSION

The decision of the district court is affirmed for the reasons set out above. The McCrays have failed to show that either the district court or the special master erred in finding that the water rights had been abandoned and/or forfeited to all but 25 acres of the property. Respondents' claim to attorney fees on appeal is denied. Costs to respondents.

Chief Justice TROUT, Justices SCHROEDER and WALTERS, and McKEE, Senior District Judge, concur.