40 P.3d 105

In re SRBA Case No. 39576, Subcase No. 36–00077D.

### NORTH SNAKE GROUND WATER DISTRICT, Appellant,

v.

### Bradley GISLER and Linda Gay Gisler, Respondents.

No. 26773.

Supreme Court of Idaho, Boise, November 2001 Term.

Jan. 18, 2002.

Beeman & Associates, P.C., Boise, for appellant. Deborah E. Nelson argued.

Patrick D. Brown, P.C., Jerome, for respondents. Patrick D. Brown argued.

KIDWELL, Justice.

North Snake Ground Water District appeals the decree of a water right to the Gislers. It argues that the water right cannot be decreed without taking into consideration the sprinkler-flood irrigation policy and that it properly and timely raised this issue before the SRBA district court.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Bradley and Linda Gisler (Gislers) submitted a SRBA claim for a water right on July 29, 1988. Under water right 36–00077C, the Gislers' claimed 4.0 cubic feet per second (cfs) for irrigation and stock water for 69 irrigated acres. Water right 36–00077C was subsequently split into rights 36–00077D and 36–00077E. This appeal concerns water right 36–00077D. The Idaho Department of Water Resources (IDWR) submitted its director's report that recommended 1.5 cfs on a total of 48 irrigated acres. On April 29, 1993, the Gislers filed an objection to the Director's Report, objecting to the amount of water and irrigated acres recommended. They were the only party to file an objection to the Director's Report. After a four-year debate, the Gislers and the IDWR came to an agreement regarding 36–00077D and executed a standard form 5(SF5) on October 21, 1997. The Gislers and the IDWR stipulated to 2.34 cfs on 61 irrigated acres. Also on October 21, 1997, Special Master Haemmerle issued a special master's report and recommendation, recommending that the Gislers' water right be decreed according to the specifications in the SF5.

On November 28, 1997, North Snake Ground Water District (NSGWD) filed a motion to alter or amend the decree executed for water right 36–00077D. The motion was NSGWD's first attempt to become involved in this subcase. NSGWD alleged that the diversion rate used in the SF5 was for usage based on gravity or flood irrigation, but the Gislers were using sprinkler irrigation. Sprinkler irrigation allegedly requires less water than gravity irrigation. NSGWD's suggested course of action was a remand to the special master for the presentation of additional evidence on the quantity of water used or the addition of qualifying language to the water right decree. NSGWD filed affidavits from three IDWR employees to support its position. The affidavits confirmed that the Gislers were using sprinkler irrigation on at least one occasion, that the recommendation for the Gislers' water right was made in reliance on the gravity irrigation analysis done by the IDWR, and that gravity irrigation in the Hagerman area "generally" requires more water than sprinkler irrigation. On March 17, 1998, Special Master Haemmerle denied NSGWD's motion.

On March 31, 1998, NSGWD timely appealed to the SRBA district court by filing a notice of objection and later filed a supporting brief. For unknown reasons a decision was never issued after oral argument and supplemental briefing. A status conference to decide how to proceed was held after the appointment of Judge Barry Wood to the SRBA court. Further briefing was submitted on September 27, 1999 and October 22, 1999. Oral argument was heard on May 8, 2000. NSGWD submitted ten issues on appeal, but many of the issues had been addressed in a prior decision, *Memorandum Decision and Order on Challenge,* subcases 36–00061 et al. (Sept. 9, 1999) (*Morris Decision*) on a challenge submitted by NSGWD. During oral argument, NSGWD condensed its many issues into one underlying issue— that the IDWR's sprinkler-flood policy of recommending water quantities necessary for gravity irrigation when the claimant is using sprinkler irrigation violates SRBA and IDWR statutory mandates.

On June 30, 2000, the SRBA district court denied NSGWD's challenge in its *Memorandum Decision and Order on Challenge,* subcase 36–00077D (June 30, 2000), citing numerous reasons for its decision. First, NSGWD was prohibited from raising a sufficiency of the evidence argument to a special master's recommendation based on a SF5 under Administrative Order 1(AO1). Allowing NSGWD to file at that stage of the proceeding would nullify the purpose of the SF5 proceeding. It called NSGWD's effort to do so a "creative attempt to file a late objection." Second, NSGWD's arguments and affidavits did not demonstrate clear error. Third, NSGWD's arguments were not based solely upon questions of law, as it asserted. Further development of the factual record would be necessary, so NSGWD's efforts to circumvent the procedural requirements of a SRBA case were improper. Fourth, the court held that the SRBA district court was not the proper forum to challenge the IDWR's policies or methodologies because the IDWR was not a party to the subcase. Finally, the qualifying language proposed by NSGWD was not necessary because it was merely a restatement of the law, by which the Gislers would be bound.

NSGWD filed a timely appeal with this Court on August 10, 2000. On October 10, 2000, NSGWD filed a motion to suspend the appeal for six months, pending the outcome of several SRBA subcases it claimed also involved the sprinkler-flood policy. This Court denied that motion on December 8, 2000.

## II.

### STANDARD OF REVIEW

The special master's findings of fact, which are adopted by the SRBA district court, are considered to be the findings of the SRBA district court. I.R.C.P. 52(a); *McCray v. Rosenkrance,* 135 Idaho 509, 513, 20 P.3d 693, 697 (2001). "The special master's conclusions of law are not binding upon the district court, although they are expected to be persuasive." *Id.* (citing *State v. Hagerman Water Right Owners Inc.,* 130 Idaho 736, 740, 947 P.2d 409, 413 (1997)). The special master's conclusions of law that are adopted by the district court are treated as the conclusions of the district court. *Id.* This Court freely reviews the district court's conclusions of law. *Id.*

## III.

### DISCUSSION

**A. North Snake Ground Water District Failed To Timely File Its Objections In The SRBA District Court.**

The appellant asserts that a party in the SRBA court may challenge the special master's legal conclusions in a motion to alter or amend. NSGWD contends that its appeal is focused on questions of law, not questions of fact. NSGWD argues that the sprinkler-flood irrigation policy used by the IDWR to form the basis for its Director's Report violates I.C. § 42–220 by allowing the recommendation of a diversion rate that exceeds the actual need for the type of irrigation method currently employed. NSGWD fears this could result in the non-beneficial use of water by water right holders, simply because they are entitled to the greater amount of water. NSGWD asserts that its efforts to

minimize this occurrence by requesting that qualifying language be incorporated into the decree was not an attempt for an impermissible advisory opinion. The appellant maintains that it properly challenged the legal validity of the special master's recommendation and that the procedural issues are subsidiary to the issues stated in the appellant's opening brief.

The appellant does not address the actual reason its motion was denied by the special master and the SRBA district court—it did not timely file any objections or responses to the Director's Report, but instead, tried to plead issues in its motion to alter or amend. In response, NSGWD argues that the procedural issue is subsidiary to its other issues on appeal. This issue is not subsidiary; it is central to this appeal.

The SRBA was begun in 1987. The process for claiming a water right through the SRBA is well established. Administrative Order 1(AO1) governs the procedures of the SRBA district court. After a claimant has filed a water right claim, the IDWR investigates a claim and issues a director's report. Great weight is placed upon the report, because it constitutes prima facie evidence of the nature and extent of a claimed water right. The remaining steps of the process hinge on the information contained in the director's report. The next step—the filing of objections or responses to the report—has been established by statute, administrative order, and case law.

> IDWR Director's Reports furnish the dates when objections and responses to the Director's Reports are due. AO1 § 4b; I.C. § 42–1412(2). Filing a response to a Director's Report allows a party to the SRBA adjudication to become a party to the subcase. AO1 § 4; I.C. § 42–1412(2).
>
> AO1 § 4b provides an *absolute* rule for responses: "The objection or response must be *received* by the court by the deadline specified." (Emphasis in original.)

State v. United States (In re Minidoka National Wildlife Refuge), 134 Idaho 106, 109, 996 P.2d 806, 809 (2000).

At this point, if the right is uncontested, it is partially decreed. If contested, the parties involved have the option of using the standard form 5(SF5) process to resolve disputed issues or the subcase can be referred to a special master. If referred, then the special master issues a report or recommendation. AO1 § 13(a). Motions to alter or amend the special master's findings are then filed by any party and ruled upon by the special master. *Id.* Challenges to the decision on a motion to alter or amend may be filed by any party who participated in the motion to alter or amend. AO1 § 13(c). The SRBA district court decides the issues presented on challenge, and may remand it to the special master or make a recommendation and issue a partial decree.

The importance of the order of these steps is evident. Requiring objections and responses to the director's report to be filed by a date set forth in the report assures the SRBA that all interested parties will be involved with the adjudication of that particular claimed water right from that point forward. This ensures that any party affected by the claim will be able to be heard throughout the process. If no one objects, then the claim can move forward with facts that have been agreed upon by all interested parties.

The SF5 process is deeply entrenched in the SRBA adjudication. It is an avenue frequently used to settle claims, which saves the court and parties involved the time and expense of a trial. Provided the IDWR agrees with the stipulations in the SF5, the claim proceeds without a trial. Because all of the interested parties would be identified by the time an SF5 proceeding is initiated, anyone concerned about the claim would be involved. To allow a new party to enter a subcase after it has been settled through the SF5 process would unfairly burden the claimant, who would be forced to try a case in which he had just reached a settlement, obviously defeating the purpose of the SF5 process.

The purpose of a motion to alter or amend has been explained by the SRBA district court in a subcase to which NSGWD was a party. *See Order on Challenge (Consolidated Issues) of "Facility Volume" Issue and "Additional Evidence" Issue,* subcases 36–

02708 et al. (December 29, 1999) (*Facility Volume Decision*). The court said, "the Rule [AO1 § 13(a)] does not provide a mechanism for advancing new legal theories and/or evidence that was discoverable during the pendency of the action, or to allow a brand new party to the subcase to step forward for the first time and have a new trial." *Id.* at 21.

NSGWD has previously asserted the same issues in different subcases. *See Morris Decision.* The facts of the *Morris Decision* mirror those of the present case. The claimants filed notices of claim to water rights, and the IDWR Director's Report recommended amounts less than those claimed by the Morrises. The Morrises filed the only objections to the report. After much debate, the parties executed a SF5 and Special Master Haemmerle issued a recommendation incorporating the elements contained in the SF5. NSGWD then timely filed motions to alter or amend—its first entrance into the subcases. It alleged that Special Master Haemmerle's recommendation was based on gravity irrigation, even though the Morrises were using sprinkler irrigation. NSGWD submitted affidavits to introduce additional information on the quantity element. Its motions were denied. NSGWD challenged the special master's holding, requesting that the subcases be remanded to the special master for the purpose of presenting additional evidence to establish the quantity amount truly being put to beneficial use through the sprinkler irrigation method.

The SRBA district court denied NSGWD's challenge. In its conclusion, the court stated:

For reasons that are not apparent to this Court, NSGWD elected not to involve themselves in the proceedings before the Special Master. NSGWD decided to make themselves heard only after discovering that the Special Master recommended quantities greater than those contained in the Directors' Report. In a contested subcase, it should come as no surprise to NSGWD that this is a possibility. NSGWD had notice of the quantities claimed by the Claimants, notice of the quantities reported in the Director's Report, and notice that these subcases were contested. Furthermore, NSGWD should be well aware that a contested subcase may be settled via an SF5, and that IDWR may concur with that settlement. Having this knowledge, it should be clear to NSGWD of the need to involve themselves in the trial proceedings before the Special Master. NSGWD could have protected themselves by simply filing with the Court (and serving on the parties) a Response to Objection (AO1 Standard Form 2) that, in essence, would state: "NSGWD agrees with the Director's Report in this subcase." Had they done this, an SF5 could not have been entered without the signature of NSGWD.

. . . .

Where the parties to a subcase and IDWR agree upon the factual elements of a water right in a subcase, and this agreement is presented to a special master in the form of an SF5, it would be impractical to require the special master to force the parties and IDWR into a further factual inquiry for the purpose of protecting the interests of a nonparty to the subcase who knew of the proceedings, claims to have a direct interest therein, and yet failed to participate.

*Id.* at 30.

In the present case, NSGWD is now trying to couch the same issues in new terms. What were previously questions of fact in the *Morris Decision* are now questions of law, although it argues that there are mixed questions of fact and law in its brief. What began as "sufficiency of the evidence" issues evolved into questions of law, when it became clear that the sufficiency argument would not be successful. NSGWD's challenges should have been raised at the objection and response phase of the adjudication, not in a motion to alter or amend.

**B. The Gislers Are Entitled To Attorney Fees On Appeal.**

 The Gislers request attorney fees on appeal under I.C. § 12–121, I.R.C.P. 54(e)(1), and I.A.R. 41 as well as costs under

I.A.R. 40. "Attorney fees are proper in these circumstances only if we are left with the abiding belief that the appeal was brought frivolously, unreasonably, or without foundation." *Turpen v. Granieri*, 133 Idaho 244, 249, 985 P.2d 669, 674 (1999) (citing *Minich v. Gem State Dev., Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979)). NSGWD has raised the same issues on appeal that were raised before the special master and the SRBA district court. NSGWD did not disclose to this Court that the special master and the district court held that the issues it pursued below were untimely raised. NSGWD merely appealed, restated, and reargued the same issues. Its appeal lacks foundation in law, is unreasonable, and justifies an award of attorney fees under I.C. § 12–121.

## IV.

### CONCLUSION

The process within the SRBA to resolve disputed water right claims is well established. Parties involved in the SRBA adjudication must respect the importance of following the established procedures for becoming involved as a party in a disputed water rights claim. By ignoring the steps outlined in Administrative Order 1, a potential party may endanger its ability to challenge a water right. This Court holds that NSGWD's issues raised in its motion to alter or amend were not timely or properly submitted.

Attorney fees and costs are awarded to respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and Justice Pro Tem PERRY CONCUR.