138 P.3d 316

Norman N. RILEY and Robin H. Riley, husband and wife, Plaintiffs–Respondents,

v.

W.R. HOLDINGS, LLC, an Idaho limited liability company, Defendant–Appellant.

W.R. Holdings, LLC, an Idaho limited liability company, Plaintiff,

v.

Jim Horkley, an individual, and in his capacity as Agent for Norman N. Riley, and Robin H. Riley, husband and wife; Mark Jensen, an individual; and Rodney Jensen, an individual; and Rodney Jensen and Mark Jensen dba Jensen Brothers; and Roy C. Klinger, in his capacity as Madison County Sheriff, Defendants.

No. 31414.

Supreme Court of Idaho, Boise, February 2006 Term.

June 6, 2006.

Just Law Office, Idaho Falls, for appellant. Kipp L. Manwaring argued.

Forsberg & Dummar, Chtd., Rexburg, for respondents. William R. Forsberg argued.

BURDICK, Justice.

This case involves a debtor's redemption of property that had been sold at a foreclosure sale. W.R. Holdings, a later purchaser of the subject property, appeals to this Court from a district court decision confirming the redemption. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondents Norman and Robin Riley (the Rileys) owned and farmed a parcel of farmland (the farm) in Madison County for many years, but defaulted on their mortgage payments to Northwest Farm Credit Services (Farm Credit). Farm Credit filed an action for foreclosure in 2000. In 2001 the Rileys filed a petition for bankruptcy under Chapter 11. In January 2002, the farm was sold at a Sheriff's foreclosure sale and purchased by Farm Credit for $329,816.71. In May of that year, Farm Credit sold the farm to W.R. Holdings, the Appellant. W.R. Holding's ownership of the farm was subject to the Rileys' statutory right of redemption. I.C. § 11–402. On July 22, 2002, the Rileys' bankruptcy plan was approved.

Hoping to redeem the farm but unable to persuade traditional lenders to extend credit, the Rileys approached local businessman Jim Horkley (Horkley) for a loan. After several months of negotiations Horkley agreed to provide the money they needed to redeem the farm and to satisfy another creditor, but insisted on an elaborate financing arrangement rather than a traditional loan. Under this plan, the Rileys were to redeem the farm and deed the property to Spiral Butte, LLC, an Oregon corporation that they understood to be owned and controlled by Horkley. The Rileys also negotiated a Lease Option Agreement with Spiral Butte, under which the Rileys agreed to lease the farm from Spiral Butte and were granted an exclusive right and option to later buy the farm at a fixed price.

On September 19, the Rileys notified W.R. Holdings that they intended to redeem the farm, and requested information that would allow the Rileys to calculate the exact sum needed for the redemption. Through counsel, W.R. Holdings announced that it would promptly forward the necessary information, but later decided against actually doing so.

In attempting to begin implementation of the plan devised by Horkley, on October 25, the Rileys executed a warranty deed purporting to convey the farm to Spiral Butte. On the same day, the Rileys and Spiral Butte entered into the previously mentioned Lease Option Agreement, and Horkley and the Rileys entered into a Real Estate Purchase Agreement for the Rileys to sell the farm to Horkley for $950,000. Despite the Real Estate Purchase Agreement between the Rileys and Horkley, there is no deed in the record from the Rileys conveying the farm to Horkley personally.

Still lacking the information they requested from W.R. Holdings, the Rileys made their own calculation of the redemption amount. Using funds provided by Horkley,

on October 30 the Rileys tendered a cashier's check for $375,419.24 to the Madison County Sheriff to complete the redemption.[1] W.R. Holdings refused the tendered redemption money. The Rileys then brought suit against W.R. Holdings, W.R. Holdings sued the Rileys, and the cases were consolidated. In district court W.R. Holdings contended the Rileys were not entitled to redeem, but if they were, the correct sum required to redeem the farm was $2,694,755.59 rather than the $375,419.24 tendered. Both parties moved for summary judgment, and the district court issued a memorandum opinion granting partial summary judgment to the Rileys and ruling they were entitled to redeem the property. The grant of summary judgment was partial because the district court determined that a question of fact remained as to the redemption amount. Following a report by a special master the district court issued a second memorandum opinion confirming the Rileys' redemption of the property and an order fixing the total needed for redemption at $369,298.74—a figure more than satisfied by the Rileys' earlier tender of redemption money.

W.R. Holdings' appeal from that judgment is now before this Court.

## II. STANDARD OF REVIEW

■■■ In reviewing a ruling on a summary judgment motion, this Court employs the same standard as that used by the district court. *Sprinkler Irrigation Co. v. John Deere Ins.*, 139 Idaho 691, 695, 85 P.3d 667, 671 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court will not set aside findings of fact unless they are clearly erroneous, *Weaver v. Stafford*, 134 Idaho 691, 696, 8 P.3d 1234, 1239 (2000), but exercises free review over questions of law, *State v. Stover*, 140 Idaho 927, 929, 104 P.3d 969, 971 (2005).

## III. ANALYSIS

■■■ Idaho provides a statutory framework permitting debtors or junior lienholders to redeem property after it has been auctioned at a foreclosure sale. I.C. § 11–401 et seq. Those seeking to redeem property must meet statutory requirements, including being a party entitled to redeem and making a timely payment of the redemption amount. *Id.* The effect of redemption by the judgment debtor is to set aside the sale and restore the debtor to the estate. *Steinour v. Oakley State Bank*, 45 Idaho 472, 480, 262 P. 1052, 1055 (1928).

In this instance, W.R. Holdings objects to the district court's determination that the Rileys properly redeemed the farm. W.R. Holdings contends the Rileys failed to comply with Idaho's redemption statutes, that the district court improperly calculated the redemption amount, that the Rileys should have been judicially estopped from redeeming the farm, and that the district court erred in ruling that a deed purporting to convey the Rileys' interest in the farm did not divest the Rileys of their redemption rights.

### A. Compliance With Statute

■■■ W.R. Holdings argues that the Rileys did not follow all the steps required by Idaho's redemption statutes. Absent a valid claim to equitable relief, one seeking to redeem foreclosed property must follow the statutory framework in order for that redemption to be effective. *Williams v. McCallum*, 128 Idaho 637, 638, 917 P.2d 794, 795 (1996).

■■■ Specifically, W.R. Holdings contends the Rileys' redemption of the farm was ineffective because they failed to provide the sheriff with written notice of their intent to redeem and to file a duplicate with the county recorder as required by I.C. § 11–403. In response, the Rileys point out they did provide the sheriff with written notice of their intent to redeem, and that the provisions of I.C. § 11–403 cited by W.R. Holdings applied only to subsequent redemptions by "redemptioners."

1. The bulk of the remaining money provided to the Rileys was used to satisfy a junior lienholder.

The Rileys are correct. Idaho's redemption statutes make a distinction between redemptions made by a "judgment debtor" such as the Rileys and those made by a "redemptioner" who is defined by statute as "[a] creditor having a lien by judgment or mortgage on the property sold, or some share or part thereof, subsequent to that on which the property was sold." *See* I.C. § 11–401. The language upon which W.R. Holdings relies is contained in a portion of I.C. § 11–403 concerned with subsequent redemptions by "redemptioners." Near the end of the section, I.C. § 11–403 provides a different set of steps to be followed if the contemplated subsequent redemption is to be made by the debtor. In this case, the Rileys were not "redemptioners" as defined by statute because they were not creditors holding a lien on the property. *See* I.C. § 11–401. Instead, the Rileys were the "judgment debtors" on whom the farm was originally foreclosed. As a result, the language cited by W.R. Holdings has no bearing under these circumstances. Moreover, I.C. § 11–403 provides only requirements for "subsequent redemptions." The redemption of the farm by the Rileys was not a "subsequent redemption" of the sort addressed by I.C. § 11–403, and therefore the statute is inapplicable to the present case.

W.R. Holdings has not identified any defect in the Rileys' compliance with Idaho's redemption statutes. We therefore affirm the district court's determination that the Rileys' redemption followed the steps required by law.

## B. The Amount of Redemption

W.R. Holdings contends the district court erred in its calculation of the amount the Rileys were required to pay in order to redeem the farm. The original redemption amount tendered by the Rileys was an estimate necessitated by W.R. Holdings' refusal to provide information regarding its expenses and profits since coming into possession of the farm. The sum tendered by the Rileys was $375,419.24, which included the price at which the farm sold at foreclosure plus interest and taxes paid by W.R. Holdings. W.R. Holdings rejected the Rileys' tender, insisting the proper redemption amount was $2,694,755.59.

The district court appointed a special master to report on accounting issues related to the redemption. After reviewing the report of the Special Master, the district court fixed the proper redemption amount as $369,298.74, a figure several thousand dollars less than that already paid by the Rileys. On appeal, W.R. Holdings argues the district court erred in excluding several categories of expenses from its calculations.

### 1. Attorney Fees

■ W.R. Holdings claims the district court improperly omitted its attorney fees from the redemption amount. Idaho Code § 11–402 provides that the judgment creditor's attorney fees for "prosecuting his claim to judgment" may be included in the sum required to redeem.

W.R. Holdings' claim for attorney fees is flawed. W.R. Holdings was not the "judgment creditor." That role was filled by Farm Credit, the entity that prosecuted the foreclosure action. Farm Credit's attorney fees from prosecuting its claim were properly incorporated into the district court's calculation. Moreover, when the district court declined to add the attorney fees claimed by W.R. Holdings, it noted that those fees were not related to Farm Credit's foreclosure action.

Given that W.R. Holdings was not the judgment creditor and its attorney fees were not incurred in prosecuting the foreclosure action, there is no basis for its assertion that those fees can be included in the redemption amount. We accordingly decline to add them.

### 2. Other Expenses

■ W.R. Holdings directs this Court's attention to several other expenses and improvements, and argues the district court erred in refusing to add them to the amount needed for the Rileys to redeem. These items include management fees, repair costs, fertilizer and groundwork, restoration of a well, upgraded power lines, and the added

value of the farm as the result of these improvements.

Idaho's redemption statutes provide for only certain expenses to be included in the amount required for a judgment debtor to redeem: the amount for which the property was purchased at foreclosure sale; interest on that amount from the date of sale to the date of redemption; certain taxes paid by the purchaser; and the judgment creditor's attorney fees in prosecuting his claim. I.C. § 11–402. Regardless of whatever equitable claim against the Rileys that W.R. Holdings may or may not possess, Idaho's statutory redemption framework does not provide for the additional expenses and improvements claimed by W.R. Holdings. We therefore decline to add the claimed improvements to the statutory redemption amount calculated by the district court.[2]

### 3. The Special Master's Findings

The special master's report included several of the expenses and improvements that W.R. Holdings contends the district court erred by omitting from its redemption calculation. W.R. Holdings asserts that the district court was obligated to accept the special master's findings of fact unless they were clearly erroneous. Contending that the special master's findings were not clearly erroneous because they were supported by substantial and competent evidence, W.R. Holdings argues the district court erred in setting a redemption figure of its own choosing.

■■■■ "In an action to be tried without a jury the court shall accept the master's findings of fact unless they are clearly erroneous." I.R.C.P. 53(e)(2); *Clear Springs Foods v. Clear Lakes Trout,* 136 Idaho 761, 764, 40 P.3d 119, 122 (2002). In determining whether a special master's findings are clearly

erroneous, "the trial court must independently review the evidence to determine whether the findings were supported by substantial evidence." *McCray v. Rosenkrance,* 135 Idaho 509, 515, 20 P.3d 693, 699 (2001) (quoting *Seccombe v. Weeks,* 115 Idaho 433, 435, 767 P.2d 276, 278 (Ct.App.1989), disapproved of on other grounds by *Rodriguez v. Oakley Valley Stone, Inc.,* 120 Idaho 370, 378, 816 P.2d 326, 334 (1991)). Unlike findings of fact, a special master's conclusions of law, while persuasive, are not binding on the district court. *N. Snake Ground Water Dist. v. Gisler,* 136 Idaho 747, 749, 40 P.3d 105, 107 (2002).

In this instance, the district court's determinations that certain categories of expenses claimed by W.R. Holdings were not covered by Idaho's redemption statutes were conclusions of law, not findings of fact. The special master's accounting of the *size* of W.R. Holdings' expenditures involved questions of fact, but whether those expenditures were covered by statute were questions of law. The district court's deviations from the special master's report resulted from the court's reading of the relevant statutes, an area where the special master's report had persuasive value but not binding effect. *Id.* at 749, 40 P.3d at 107. As a result, we find no error in the district court's determinations.

### C. Judicial Estoppel

■■■■ W.R. Holdings asserts the Rileys failed to adequately disclose their arrangement with Horkley or their intent to redeem the farm during the bankruptcy process. Pointing to these alleged failures, W.R. Holdings argues the Rileys should have been judicially estopped from redeeming the farm.

■■■■ The doctrine of judicial estoppel prohibits "a party from assuming a position in one proceeding and then taking an incon-

---

**2.** W.R. Holdings also contends that the district court's confirmation of the Riley's redemption of the farm was improper because it allegedly was a "partial redemption." W.R. Holdings characterizes partial redemptions as redemptions effectuated by the payment of less than the full redemption amount provided by statute. Two out-of-state authorities are cited by W.R. Holdings for the proposition that partial redemptions are not permissible. Partial redemptions are not, how-

ever, redemptions made after a partial payment. Instead, partial redemptions involve situations where the redeeming party holds an interest in less than all of the property subject to redemption. *See* I.C. § 5–227. Neither party contends that the Rileys attempted to redeem only a portion of the farm, and as a result the matter of "partial redemptions" has no bearing on this case.

sistent position in a subsequent proceeding." *A & J Const. Co., v. Wood,* 141 Idaho 682, 688, 116 P.3d 12, 18 (2005) (quoting *Robertson Supply, Inc. v. Nicholls,* 131 Idaho 99, 101, 952 P.2d 914, 916 (Ct.App.1998)). Idaho courts may apply the doctrine even if the prior proceeding was a bankruptcy action. *Id.* at 688, 116 P.3d at 18. Because judicial estoppel is an equitable doctrine existing to protect the dignity of the judicial process it is "invoked by a court at its discretion." *Sword v. Sweet,* 140 Idaho 242, 252, 92 P.3d 492, 502 (2004).

The district court declined to grant W.R. Holdings the equitable relief it sought. When doing so, the district court noted that the Rileys had disclosed their redemption right to the bankruptcy court, listing the book value of their right to redeem at $170,000, and the value of that right upon liquidation as zero. Additionally, the district court found that although the negotiations between Horkley and the Rileys began during the Rileys' bankruptcy action there was no indication that those negotiations bore fruit until months after the Rileys' bankruptcy plan was confirmed.

 When reviewing a trial court's ruling under the abuse of discretion standard, this Court inquires: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In this instance the district court's decision reveals that it understood the determination of whether to grant W.R. Holdings relief under the doctrine of judicial estoppel was discretionary. The district court declined to grant relief based on its consideration of the circumstances before it, including those disclosures the Rileys provided the bankruptcy court and the absence of evidence that the arrangement between Horkley and the Rileys was reached prior to the acceptance of the Riley's bankruptcy plan. The district court's ruling was within the bounds of its discretion and was the product of reason. We therefore conclude the district court did not abuse its discretion in declining to grant W.R. Holdings equitable relief under the doctrine of judicial estoppel.

## D. The Address Requirement

Central to the resolution of this case is the determination of the legal effect of the warranty deed purporting to convey the farm from the Rileys to Spiral Butte. W.R. Holdings contends that the deed conveyed the Riley's interest in the farm to Spiral Butte five days before the Rileys tendered their redemption payment. As a result, W.R. Holdings maintains that the Rileys' redemption was ineffective because they sold whatever interest they had in the farm before attempting to redeem.

The district court did not reach the question of whether the warranty deed from the Rileys to Spiral Butte divested the Rileys of the right of redemption. Instead, the district court ruled that the deed itself was ineffective because the Rileys' address was not included on the document. As observed by the district court, I.C. § 55–601 requires the name and complete mailing address of the grantee to appear on any instrument conveying real property. The difficulty with the district court's reasoning is that the Rileys were not the *grantees* of the property in question, they were the *grantors.* Idaho Code § 55–601 imposes the address requirement only on grantees, and here the address of the grantee, Spiral Butte, was included on the deed. As both parties agree, the district court misapplied I.C. § 55–601. We consequently reverse the district court's determination that the warranty deed conveying the farm from the Rileys to Spiral Butte was ineffective as the result of omitted address information.

## E. Delivery of the Deed

 Although the Rileys' deed to Spiral Butte purports to have conveyed the Rileys' interest in the farm five days before it was redeemed, there remains the question of whether title was passed immediately. The arrangement between Horkley and Rileys required events to unfold in a specific se-

quence. First, Horkley would provide money to the Rileys. Then, the Rileys would use that money to redeem the farm. Once the Rileys again owned the farm they would pass it by deed to Spiral Butte. W.R. Holdings argues that because the Rileys signed the deed purporting to convey the farm to Spiral Butte at the wrong point in the sequence, the Rileys divested themselves of the right of redemption before it was exercised.[3] In this instance, however, the Rileys' deed to Spiral Butte did not convey their interest in the farm at the time of execution because it did not then meet the requirements of a valid delivery.

"Delivery in some form is absolutely essential" to the validity of a deed. *Bowers v. Cottrell,* 15 Idaho 221, 228, 96 P. 936, 938 (1908). "[D]elivery includes surrender and acceptance, and both are necessary to its completion." *Estate of Skvorak v. Sec. Union Title Ins. Co.,* 140 Idaho 16, 20–21, 89 P.3d 856, 860–61 (2004) (quoting *Bowers,* 15 Idaho at 228, 96 P. at 938). "[W]hether a deed has been delivered so as to pass title depends upon the intention of the parties." *Flynn v. Flynn,* 17 Idaho 147, 161, 104 P. 1030, 1034 (1909). "The mere placing of a deed in the hands of the grantee does not necessarily constitute a delivery. The question is one of intention: whether the deed was then intended by the parties to take effect according to its terms." *Estate of Skvorak,* 140 Idaho at 21, 89 P.3d at 861 (quoting *Crenshaw v. Crenshaw,* 68 Idaho 470, 475, 199 P.2d 264, 267 (1948)). "[T]he evidence of delivery of a deed must come from without the deed. In other words, a deed does not upon its face show delivery, and therefore parol evidence is admissible to show such fact." *Bowers,* 15 Idaho at 228, 96 P. at 938. "[T]he real test of the delivery of a deed is this: Did the grantor by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered." *Estate of Skvorak,* 140 Idaho at 21, 89 P.3d at 861 (quoting *Flynn,* 17 Idaho at 160, 104 P. at 1034).

---

**3.** We do not reach the issue of whether a valid deed passes the right of redemption or if that

In this case, the Rileys did not intend to convey their interest in the farm to Spiral Butte until after it was redeemed. Indeed, the entire arrangement between Horkley and the Rileys depended on the Rileys being able to accomplish the planned redemption. Even if the deed in question were physically placed in Horkley's hands as the grantee, doing so would not necessarily constitute a delivery completing the conveyance of the farm. *Estate of Skvorak,* 140 Idaho at 21, 89 P.3d at 861. In order for title to pass there must be delivery, and delivery requires the grantor to "intend to divest himself of title." *Id.* Here, the Rileys had no such intent. Accordingly, we hold that the Rileys still possessed the right to redeem the farm at the time they did so.

## IV. CONCLUSION

The district court's order below is affirmed. Costs are awarded to the Respondent.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES, concur.

right is personal to the judgment debtor.