586 P.2d 1378

Frank BEAL and Iva Pearl Beal, husband and wife, Plaintiffs-Appellants,

v.

MARS LARSEN RANCH CORPORATION, INC., a Foreign Corporation, Dixon Christensen and Florence Christensen, husband and wife, William Hegerhorst and Valere Hegerhorst, husband and wife, and Grant S. Kesler, Defendants-Respondents.

No. 12397.

Supreme Court of Idaho.

Nov. 29, 1978.

**664**

R. M. Whittier, Craig R. Jorgensen, John C. Souza, Pocatello, for plaintiffs-appellants.

Ben Peterson, Kenneth E. Lyon, Pocatello, Craig S. Cook, Salt Lake City, Utah, J. D. Williams, Preston, for defendants-respondents.

SHEPARD, Chief Justice.

This is an appeal from a judgment which denied relief to plaintiffs-appellants Beals in their mortgage foreclosure action. Relief was also denied as to plaintiffs' allegation of misconduct on the part of attorney Grant S. Kesler. We affirm in part and reverse in part.

On December 9, 1972, a contract was entered into between the Beals, as sellers, and Mars Larsen Ranch Corporation, as buyer, relating to the sale of approximately 1,836 acres of land located in both Franklin and Bannock Counties, Idaho. That contract provided for a payment of $54,000, representing a portion of the Beals' equity, the assumption of an outstanding Federal Land Bank loan of $51,837.87, and periodic payments thereafter for the balance of the purchase price in the amount of $88,162.87.

In the event of a breach of the contract by the buyer, the contract provided three alternative remedies to the sellers. The alternative remedy which the Beals attempted to exercise here was to treat the contract as a note and mortgage and foreclose the same in accordance with those laws of Idaho relating to foreclosure of a mortgage. The contract required a written notice of default by the sellers and also provided for a 120-day grace period within which buyer could make payments following their due date.

The Beal-Mars Larsen contract was only the first step in a predesigned three party transaction. All parties understood and intended a three party transaction which involved the Mars Larsen assignment of its interest in the Beal property to defendants-respondents, Dixon and Florence Christensen. That assignment was reflected in a contract dated December 20, 1972, wherein the Christensens traded certain real property owned by them to Mars Larsen. That contract and its parties are not an issue here.

There is no question but that the Beals and the Christensens themselves negotiated the terms of the December 9, 1972 contract pertaining to the sale of the Beal property. No representative of Mars Larsen actually took part in the negotiation of those terms since it was understood that the Beals would look to the Christensens for performance of that contract. Such is not in dispute. The Beals and the Christensens were aided in their negotiations by one Lee Allen, a Utah real estate broker, who in turn furnished the negotiated terms of the contract to one Grant Kesler, a Utah attorney. The December 9, 1972 contract of sale of the Beals' property was prepared by Kesler, consistent with the specifications furnished to him by Lee Allen. The Christensens and the Beals agreed that they would share the

cost of preparing the contract, which was in the amount of $500.00. Kesler billed both the Christensens and the Beals $250.00 each, but the Beals never paid their share of the cost of the preparation of the contract.

In turn, the Christensens assigned their interest in the Beal property and the contract to the defendants-respondents William and Valere Hegerhorst in January 1974. The contract of December 9, 1972 provided for an annual payment on November 1, 1974. The amount of that payment became a principal issue in the case. The payment due November 1, 1974 was not paid by the Hegerhorsts, but rather, on December 5, 1974, the Hegerhorsts wrote the Beals requesting permission to make only a partial payment. That request was refused. The Christensens became aware that the Hegerhorsts might not make the annual payment and in an attempt to protect their interest in the property, the Christensens, through Kesler, demanded and received from the Hegerhorsts a check for $12,734.27. That check included the November 1974 Federal Land Bank payment which was due, owing and unpaid in the sum of $3,814.27. The balance of $8,920.00 represented the amount the Christensens believed due to Beals as the first payment required by the December 9, 1972 contract. In the meantime the Beals, attempting to protect their loan contract with the Federal Land Bank, made the payment due under that contract. A few days after it was due the Hegerhorsts tendered the November 1974 payment to the Federal Land Bank, which was refused because payment had previously been made by the Beals. There is no question but the Hegerhorsts made the November 1975 Federal Land Bank payment.

After the Christensens had obtained payment from the Hegerhorsts, such amount was then mailed to the designated place of payment in the contract, to-wit: the Perryton National Bank of Perryton, Texas. That tender was refused and returned to Kesler with instructions that he should contact R. M. Whittier, the attorney for the Beals. Kesler thereupon tendered that same amount to Whittier and that check, insofar as the record discloses, remains in the possession of Whittier.

Thereafter Kesler wrote letters to Whittier on at least four separate occasions indicating the willingness of the Christensens to tender the exact amount owed under the December 9, 1972 contract and requesting advice as to the amount claimed due and owing by the Beals. Whittier never complied with those requests. The only communication received from Whittier was a letter of January 8, 1975, which only informed Kesler that the Hegerhorsts had defaulted as to payments due under the contract. On May 19, 1975, a letter was received from Whittier setting forth the legal description of the property and that portion of the contract dealing with the formula for payment. The letter stated that the property was not properly insured, that the taxes were delinquent and that the Christensens would be given five days to cure the default. Neither of said letters purported to set forth the exact amount of the payment which the Beals claimed as due and owing under the contract.

Thereafter no further communications were received from the Beals or their attorney Whittier until June 1975, when the instant action was filed. Therein the Beals alleged breach of the December 9, 1972 contract, elected to treat the contract as a note and mortgage and exercise the remedy of foreclosure. The Beals further sought damages against Kesler and additional relief in the nature of quiet title. In the December 9, 1972 contract the Beals had reserved a three-eighths interest in the mineral rights in the property. Kesler, representing the Christensens, had recorded a notice of the December 9, 1972 contract which failed to set forth the Beals' reservation of the three-eighths interest in the mineral rights.

At trial the Beals contended that the tender of $12,734.27, sent by attorney Kesler to the Texas bank and subsequently to Whittier, was insufficient under the contract and, therefore, the refusal of that tender was justified. At trial and on appeal the Beals have continued to contend that the total payment due on November 1, 1974, including the amount due for the 1974 Federal Land Bank payment, was $19,169.25. It is not disputed that, aside from

the contract provisions, neither Kesler nor the Christensens knew of the amount claimed by the Beals prior to the service of the instant complaint in June of 1975.

■ At trial the court found that the December 9, 1972 contract required the buyers to maintain insurance on all insurable buildings on the property. The court found that all major buildings had been insured and that only steel graineries which would not burn and rundown shacks had not been insured. The court also found that upon the receipt of the letter complaining of non-insurance, the Hegerhorsts had immediately insured everything on the property and that, therefore, the Beal property was insured in an amount greater than that required by the contract. This is sustained by the evidence and will not be disturbed.

The court also found that the December 9, 1972 contract required the buyers to pay all taxes and assessments which became due on the premises. Most of the property was located in Franklin County, with only a small portion located in Bannock County. The taxes for the Franklin County portion of the property were timely paid. Taxes for the Bannock County portion of the property in the amount of $14.27 were technically in default. However, the evidence indicated that those taxes were paid immediately upon receipt of information from the county regarding its claims of taxes due. The trial court found that the taxes had been paid or attempted to be paid within the terms of the contract and that no damage had resulted to the Beals from the technical default.

■ Implicit in the trial court's findings and conclusions regarding the alleged breach relating to failure to insure and nonpayment of taxes is the theory that such were not sufficient to require the court to exercise its equitable powers of foreclosure. An action to foreclose a mortgage is equitable in nature. *Cross v. Fed. Nat. Mortg. Ass'n*, 359 So.2d 464 (Fla.App.1978); *Notey v. Darien Const. Corp.*, 41 N.Y.2d 1055, 396 N.Y.S.2d 169, 364 N.E.2d 833 (N.Y.1977); *Mid-State Homes, Inc. v. Jackson*, 519 P.2d 472 (Okl.1974); *Hill v. Hill*, 185 Kan. 389,

345 P.2d 1015 (1959); *Kirkpatrick v. Stelling*, 36 Cal.2d 658, 98 P.2d 566 (1940). See generally Annot.: Grounds of Relief from Acceleration Clause in Mortgage, 70 A.L.R. 993 (1931). In a suit of equitable cognizance to foreclose a real estate mortgage the trial court may refuse foreclosure where there has been a technical default due to a mistake or mere venial inattention and of no damage to the mortgage security or prejudice to the mortgagee. *Continental Fed. Sav. and Loan Ass'n v. Fetter*, 564 P.2d 1013 (Okl.1977); *Murphy v. Fox*, 278 P.2d 820 (Okl.1955); *Lawton v. Lincoln*, 200 Okl. 182, 191 P.2d 926 (1948); *see generally*: 55 Am.Jur.2d, Mortgages, § 375.

■ The record discloses no evidence whatsoever that the alleged nonprocurement of insurance or nonpayment of the minimal amount of taxes due on the Bannock County property in any way damaged or prejudiced the Beals' security. The district court did not err in denying the Beals the remedy of foreclosure.

■ In their claim against Kesler relating to his recording of the notice of contract without an indication therein that the Beals had reserved a three-eighths mineral rights interest in the property, the Beals sought judgment for attorney's fees and expenses required to be expended to clear the title, exemplary damages, and all other and further relief deemed just and equitable. The district court found that the recorded notice of contract indicated that the Beals had transferred *all* their interest in the subject property and failed to set forth the three-eighths interest in the mineral rights which had actually been reserved by the Beals. There is no dispute that such mineral interest was reserved by the Beals. The district court denied relief in this regard for failure of proof of any damage.

The testimony indicates that the Beals never indicated to Kesler that their position with regard to the mineral rights was jeopardized by the filing of the notice of contract, and at no time prior to the filing of the instant lawsuit did they request Kesler to remove the recorded notice or correct the same. The Beals presented no evidence even tending to show that the notice of

contract had ever impaired the saleability of the Beals' reserved mineral rights or had in any other way damaged their interest in the mineral rights. Apparently, the thrust of the Beals' argument is that the mere showing that the notice of contract was recorded is sufficient to prove damages. We do not agree.

■ Ordinarily, the measure of damages is such as will compensate for the loss or prejudice suffered. 74 C.J.S. Quieting Title § 99; *Vaughan v. Roberts*, 45 Cal.App. 246, 113 P.2d 884 (1941). The mere fact that the notice of contract was recorded in this case does not in and of itself require a finding of actual damages by the district court. The finding of the district court that no damages were suffered by the Beals as a result of the recording is substantially supported in the evidence and will not be disturbed on appeal. I.R.C.P. 52(a); *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977). There is no contention by the Beals, either at trial or on appeal, that the actions of Kesler fall within the purview of slander of title as generally discussed in *Matheson v. Harris*, 98 Idaho 758, 572 P.2d 861 (1977), and, therefore, any discussion of the measure of damages under such action is deemed unnecessary here.

■ We find, however, that the failure of the Beals to prove damages does not preclude obtaining equitable relief by removing the cloud on their reserved mineral interest which was created by the recording of the notice of contract. An action to remove a cloud on the plaintiff's title is one in equity. *Clinton v. Meyer*, 43 Idaho 796, 225 P. 316 (1927). *See also* 65 Am.Jur.2d, Quieting Title, § 2; 74 C.J.S. Quieting Title § 1. A court of equity will not in general allow an otherwise clear title to be clouded by a claim unenforceable at law or in equity. *Clinton v. Meyer, supra; see generally, Anderson v. Whipple*, 71 Idaho 112, 227 P.2d 351 (1951). An action to remove a cloud upon a title is an equitable one and is intended to remove a particular instrument or documentary evidence of title or encumbrance against the title which is hanging over or threatening a plaintiff's title therein. *York v. Newman*, 2 N.C.App. 484, 163

S.E.2d 282 (1968); *McGuinness v. Hargiss*, 56 Wash. 162, 105 P. 233 (1909); *Castro v. Barry*, 79 Cal. 443, 21 P. 946 (1889). "It may broadly be stated that a cloud on title is an outstanding instrument, record, claim, or encumbrance which is actually invalid or inoperative, but which may nevertheless impair the title to property." 65 Am.Jur.2d, Quieting Title, § 9; *see also* Annot.: What Constitutes Cloud on Title Removable in Equity, 78 A.L.R. 24 (1932). The notice of contract recorded by Kesler constitutes a sufficient cloud on the title of the Beals' reserved mineral interest to require affirmative action by the trial court to remove such cloud on the Beals' title to the reserved mineral interest. That portion of the cause is therefore reversed and remanded to the district court for further proceedings.

The Beals further assign error to the finding of the trial court that Kesler, as an attorney, had not committed misconduct during the above outlined proceedings which would justify recovery of damages by the Beals for breach of the attorney-client relationship. We note first that there is testimony by the Beals indicating that in their contemplation Kesler did not represent them as their attorney during the outlined proceedings. We also note that this action is not one in the nature of a disciplinary proceeding, and, therefore, we do not discuss whether under the facts of this case disciplinary action would be warranted. It is sufficient to deal with the finding of the trial court that Kesler was not guilty of misconduct.

■ The relationship of client and attorney is one of trust, binding an attorney to the utmost good faith in dealing with his client. In the discharge of that trust, an attorney must act with complete fairness, honor, honesty, loyalty, and fidelity in all his dealings with his client. *Benting v. Spanbauer*, 58 Idaho 44, 69 P.2d 983 (1937). An attorney is held to strict accountability for the performance and observance of those professional duties and for a breach or violation thereof, the client may hold the

**668**

attorney liable or accountable. 7 C.J.S. Attorney and Client § 125.

While in many situations an attorney's representation of both a buyer and seller in a real estate transaction may create a conflict of interest (*See* Annot.: Attorney and Client: Conflict of Interest in Real Estate Closing, 68 A.L.R.3d 967), if the parties have already agreed on the basic terms of the agreement and the attorney acts primarily as a "scrivener" he may normally represent both parties after obtaining their consent. *Blevin v. Mayfield*, 189 Cal. App.2d 649, 11 Cal.Rptr. 882 (1961); *see* Aronson, *Conflict of Interest*, 52 Wash.L. Rev. 807 (1977). The above outlined evidence indicates that the terms of the contract were directly negotiated between the Beals and the Christensens, aided by a real estate broker who represented the Beals. Kesler was requested only to draft the contract according to those terms agreed upon by the Beals and the Christensens. There is no showing that the contract was drawn by Kesler other than in accordance with the terms negotiated by the Beals and the Christensens. We find no error in the trial court's disposition of this aspect of the cause.

We turn finally to the Beals' principal contention on appeal, to-wit: that the trial court incorrectly determined and found the amount of the annual payment to be made by the buyers. Where a contract is clear and unambiguous, a determination of its meaning and legal effect are questions of law for determination by the court. *Commercial Credit Corp. v. Chisholm Bros. Farm Equip. Co.*, 96 Idaho 194, 525 P.2d 976 (1974); *Parks v. City of Pocatello*, 91 Idaho 241, 419 P.2d 683 (1966). The primary objective of construction of a contract is to discover the intention of the parties and in order to effectuate that objective the contract must be construed as a whole and considered in its entirety. *West v. Brenner*, 88 Idaho 44, 396 P.2d 115 (1964); *Minidoka County v. Krieger*, 88 Idaho 395, 399 P.2d 962 (1964).

The pertinent portion of the contract provides, " * * * Balance of Sellers' equity in the amount of $88,162.89 is to be paid in fifteen (15) equal annual payments beginning November 1, 1974 * * *. Said yearly payments are to be applied first to the payment of interest and second to the reduction of the principal. Interest shall be charged from January 15, 1973, on all unpaid portions of the purchase price at the rate of six percent (6%) per annum * *."

The Beals focus on only a portion of the applicable contract language and argue that the first sentence of the contract language set forth above requires fifteen "equal annual payments" *of principal*. We disagree. Such construction of the contract is not supported by the express language thereof. Here, that portion of the language referring to equal annual payments does not per se include or exclude interest. The contract, however, does state that the yearly payments should be applied first to interest and then to principal and that language obviously anticipates the inclusion of both principal and interest in the payment. We hold that the trial court correctly construed the contract language to require fifteen annual and equal installments to be paid by the buyers, which monies should first be applied to accumulated interest and the remainder to the unpaid principal balance.

Under the above construction of the contract language, the trial court determined that the annual payment was in the amount of $13,322.94, including $3,814.27 owing under the Federal Land Bank contract. We find no error in that computation. It will be remembered that the Christensens actually tendered the amount of $12,734.27. The Beals have made no contention either at trial or on appeal that the said Christensen tender of $588.67 less than the amount found to be due by the district court constituted grounds for foreclosure under the circumstances presented here. The only contention of the Beals was and continues to be that said annual payment was and should

have been $19,169.29. Under the circumstances presented here, including the conduct of the Beals and their attorney, we find it unnecessary to determine if the deficiency of $588.67 was such as to constitute grounds for foreclosure.

The judgment of the district court is affirmed in all respects save and except that portion denying relief in the nature of quiet title as to the Beals' reserved mineral rights in the property. As to that portion only, the cause is reversed and remanded to the district court for further proceedings consistent herewith. Costs to respondent.

McFADDEN, DONALDSON, BAKES and BISTLINE, JJ., concur.