# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48720

In the Matter of the Petition for Release from a Common Law Lien.

-----------------------------------------------------------

FORD ELSAESSER, as Successor Personal Representative of the Estate of Victoria H. Smith,

    Petitioner-Respondent,

v.

BLACK DIAMOND COMPOST, LLC,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2022 Term

Opinion filed: July 8, 2022

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The judgment of the district court is <u>affirmed</u>.

Law Office of Vernon K. Smith, PC, Boise, for Appellant. Vernon K. Smith argued.

Givens Pursley LLP, Boise, for Respondent. Alexander P. McLaughlin argued.

---

MOELLER, Justice.

Black Diamond Compost, LLC ("Black Diamond"), filed a "Claim of Ownership" with the Ada County Recorder's Office to notify the public of its ownership of compost and humus located on real property in Ada County. Black Diamond disputes the ownership of the land and deemed it necessary to notify the public that the compost and humus located on the real property belonged to it. Ford Elsaesser, personal representative of the Estate of Victoria H. Smith, attempted to sell the real property but could not secure "clear title" in a preliminary title report and claimed this was due to Black Diamond's Claim of Ownership. Elsaesser filed an action in the district court against Black Diamond, alleging the Claim of Ownership was a nonconsensual common law lien prohibited under Idaho Code section 45-811. The court agreed and ordered the release and

1

discharge of the recorded Claim of Ownership. It also awarded Elsaesser a $5,000 civil penalty and granted his request for costs and attorney fees. Black Diamond timely appealed.

## I. STATEMENT OF FACTS

### A. Background

This matter has a long and convoluted backstory spanning multiple cases and appeals. The principal actors in this saga are Ford Elsaesser, the personal representative of the Estate of Victoria H. Smith (the "Personal Representative"),[1] and Vernon K. Smith ("Vernon"), a son of Victoria and the attorney for Black Diamond. Three prior cases give context to this dispute: (1) *Matter of Estate of Smith*, 164 Idaho 457, 432 P.3d 6 (2018) (hereinafter "Probate Case"); (2) *Elsaesser v. Gibson*, 168 Idaho 585, 588, 484 P.3d 866, 869 (2021) (the appeal from *Hillen v. Gibson*, CV01-19-10368) (hereinafter "Ejectment Action"); and (3) *Smith v. Smith*, Ada County Case No. CV-OC-2015-2348, Fourth District Court. The factual background of these cases is summarized only to the extent that such facts are needed to provide context to the case at hand.

David Gibson, managing member of Black Diamond, entered into a joint-venture agreement with Victoria and Vernon. Through the agreement, Gibson was permitted to produce compost and humus on an approximately 33-acre[2] portion of 520 acres of real property near Gowen Field (the "Gowen Property").

Ownership of the Gowen Property is disputed. Victoria acquired real property, including the Gowen Property, during her lifetime. In 1990, Victoria prepared a holographic will leaving everything to her son, Vernon, effectively disinheriting her other two children, Joseph Smith and Victoria A. Converse. She also executed a durable power of attorney, making Vernon her attorney-in-fact. Vernon later formed a limited liability company, VHS Properties, LLC ("VHS"), and transferred all of Victoria's personal and real property to VHS.

Several months after Victoria's death in September 2013, Vernon's brother, Joseph, filed a petition in the Probate Case for formal adjudication of Victoria's intestacy, claiming the will was invalid as a product of undue influence by Vernon. While the Probate Case was pending, Joseph and his wife Sharon also filed a separate action against Vernon—*Smith v. Smith*—in which they

---

[1] Noah G. Hillen was the first personal representative appointed in the Probate Case. Ford Elsaesser is the successor personal representative. Most of the referenced cases were initiated by Hillen and continued by Elsaesser. This opinion will refer to the "Personal Representative" rather than differentiating the two individuals unless such differentiation is necessary.

[2] Black Diamond Compost claims the portion it occupied consisted of 33 acres, while Elsaesser asserts that Black Diamond Compost occupied "roughly 40" acres.

attempted to enjoin Vernon from removing juniper trees along an easement across VHS's property to which Joseph had rights. The district court dismissed *Smith* with prejudice on January 19, 2017. Vernon asserts that the dismissal of *Smith* effectively affirmed VHS's ownership of the Gowen Property.

In March 2017, the magistrate court in the Probate Case concluded that Victoria's will was invalid because it was a product of Vernon's undue influence. Accordingly, it ruled that Victoria died intestate. In June 2017, the court entered a judgment pursuant to Idaho Rule of Civil Procedure 70(b), which vested title to all of Victoria's real and personal property, including the Gowen Property, in the Personal Representative. Vernon disputed the Personal Representative's ownership of the properties formerly belonging to Victoria in a recent appeal: *Elsaesser v. Riverside Farms, Inc.*, __ Idaho __, __ P.3d __ (2022). In that case, Riverside Farms (also represented by Vernon) had leased property from the Personal Representative and refused to vacate the property after the lease expired. The Personal Representative commenced an ejectment action, and Riverside Farms argued that the Personal Representative was not the true owner of the property because the Rule 70(b) judgment issued in the Probate Case was precluded by *res judicata* since *Smith v. Smith* was dismissed with prejudice.[3] In an opinion released earlier this week, this Court determined the judgment in *Smith v. Smith* did not preclude the magistrate court in the Probate Case from issuing the Rule 70(b) judgment, thereby confirming that the Personal Representative is the owner of the Gowen Property and the other properties included in the Rule 70(b) judgment.

## B. The Matter at Hand

Black Diamond produced humus and compost on the Gowen Property for sixteen years beginning in 2004 under the joint venture agreement Victoria and Vernon entered into with Gibson. When the Personal Representative was granted permission from the district court in the Probate Case to sell the Gowen Property in December 2019, the Personal Representative sent Gibson a notice of termination of occupancy demanding Gibson vacate the Gowen Property by January 31, 2019. When Gibson refused to vacate the premises, the Personal Representative brought the Ejectment Action to have Black Diamond removed. On October 2, 2019, the district

---

[3] Whether the complaint in *Smith* was properly dismissed *with prejudice* by the district court was disputed in *Riverside Farms.* However, in our opinion released earlier this week, we determined that whether *Smith* was dismissed with or without prejudice was irrelevant to our analysis and conclusion. *Id.* at __, __ P.3d at __. Thus, we declined to address it.

court entered judgment in the Personal Representative's favor and ordered Gibson to "immediately vacate and surrender possession" of the Gowen Property.[4] The district court also issued a writ of assistance to the Ada County Sheriff, commanding him to remove David Gibson, his goods, and his chattels from the Gowen Property.

About a month later, the Personal Representative received permission from the magistrate court in the Probate Case to approve the sale of the Gowen Property for $13 million. The Personal Representative entered into a purchase and sale agreement on or about October 28, 2019. Gibson refused to vacate the Gowen Property, so the Personal Representative filed a motion for contempt in the Ejectment Action. The court denied the contempt motion, so the Personal Representative contacted the Sheriff who requested $80,000 to remove Gibson and his equipment. The magistrate court in the Probate Case approved the Personal Representative's motion to pay the $80,000 from the Estate of Victoria H. Smith. On June 25, 2020, counsel for the Personal Representative sent a letter to the Ada County Sheriff's Office which enclosed the $80,000 for the Sheriff to "eject Mr. Gibson *and remove and store his equipment*." (Emphasis added). The Sheriff removed and stored Gibson's tools and equipment. However, the Sheriff did not remove the 350,000 cubic yards of humus and compost remaining on the Gowen Property.

On July 10, 2020, Black Diamond filed a document entitled "Claim of Ownership – In Crops-Compost-Humus Production" (the "Claim of Ownership") with the Ada County Recorder's Office. The document asserts that the compost and humus left behind is the personal property of Black Diamond and advises that anyone removing it "shall be liable to Claimant for the minimum market valuation of said agricultural commodity and crop-product in the sum of $17,500,000.00."

On July 28, 2020, counsel for the Personal Representative wrote to Black Diamond asking that Black Diamond work with him to coordinate removal of the compost and humus within 30 days. The letter stated that if Black Diamond failed to remove the compost and humus within the timeframe, it would be deemed abandoned. Vernon, as counsel for Black Diamond, responded with a seven-page letter outlining his grievances against the Personal Representative and his counsel's law firm. Black Diamond's response alleged that the Personal Representative improperly restricted the Sheriff from moving the compost to a 55-acre parcel originally contemplated by Gibson after his ejectment. Black Diamond suggested the Personal Representative have the

---

[4] Gibson appealed the ejectment action to the Idaho Supreme Court in *Elsaesser v. Gibson*, 168 Idaho 585, 484 P.3d 866 (2021). This Court affirmed the decision to eject Gibson. *Id.* at 595, 484 P.3d at 876.

4

purchaser make arrangements to transport the equipment being stored and the humus and compost remaining on the Gowen Property to that 55-acre parcel.

On August 14, 2020, counsel for the Personal Representative replied to Black Diamond, again asking Black Diamond to withdraw and release the Claim of Ownership. In response, counsel for Black Diamond sent another seven-page letter personally attacking the Personal Representative. Counsel for the Personal Representative replied on August 20, 2020, offering to contribute to the cost of removal if Black Diamond would provide a facility (or confirm the proposed 55-acre parcel was a permitted facility), confirm that the compost and humus could be lawfully transported to the facility, and release the Claim of Ownership. Black Diamond refused the offer.

On September 11, 2020, the Personal Representative filed a petition with the district court to release Black Diamond's Claim of Ownership. The Personal Representative alleged the Claim of Ownership created a cloud on the title, preventing the sale of the Gowen Property since the Personal Representative could not deliver marketable title. An order to show cause was issued to Black Diamond ordering Black Diamond to appear and "state why the [c]ourt should not issue an order releasing the [Claim of Ownership]." The hearing took place on March 3, 2021. In its memorandum decision, the district judge concluded that the Claim of Ownership was an impermissible common law lien recorded against the Gowen Property. The district court recognized that Black Diamond's Claim of Ownership only purported to claim ownership of Black Diamond's personal property—not the Gowen Property. However, the district court concluded that because the notice can be found in the Gowen Property chain of title, "[w]hether intended or not, recording the [Claim of Ownership] in this matter serves as an encumbrance on the real property." The district court further concluded that the Claim of Ownership met the statutory requirements of a nonconsensual common law lien, prohibited by Idaho Code section 45-811. Therefore, the district court ordered the release and discharge of the Claim of Ownership. The district court also awarded Elsaesser a $5,000 civil penalty pursuant to Idaho Code section 45-811, costs of $145.90, and attorney fees of $10,364 pursuant to Idaho Code section 45-811.

Black Diamond filed a notice of appeal on March 30, 2021. This Court conditionally dismissed the appeal for lack of a final judgment. The district court then entered a final judgment, and Black Diamond filed an amended notice of appeal on May 4, 2021. The matter is now at issue before us.

## II. STANDARDS OF REVIEW

This case ultimately comes down to a question of statutory construction. "The interpretation of a statute is a question of law this Court reviews de novo." *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019).

"The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act." *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013) (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)). "It must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Harrison v. Binnion*, 147 Idaho 645, 649, 214 P.3d 631, 635 (2009) (quoting *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006)). "Even when addressing an ambiguous statute, the courts 'are not free to rewrite a statute under the guise of statutory construction.' " *Fell v. Fat Smitty's L.L.C.*, 167 Idaho 34, 38, 467 P.3d 398, 402 (2020) (quoting *State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009)).

> To ascertain the legislature's intent, this Court examines the literal words of the statute, the context of those words, the public policy behind the statute, and the statute's legislative history. [*State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999)]. Courts must construe a statute "under the assumption that the legislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994). Finally, Idaho has recognized the rule of *expression unius est exclusion alterius*—"where a constitution or statute specifies certain things, the designation of such things excludes all others." *Local 1494 of the Int'l Ass'n of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978).

*Fell*, 167 Idaho at 38, 467 P.3d at 402 (alteration in original) (quoting *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 159 Idaho 84, 87, 356 P.3d 377, 380 (2015)).

## III. ANALYSIS

The Personal Representative's petition asked the district court for an order releasing the Claim of Ownership pursuant to Idaho Code section 45-811, which prohibits nonconsensual common law liens. Black Diamond notes that "[t]he sole intent and only purpose for recording the [Claim of Ownership] was to notify the public as to the ownership of the personal property and prevent the destruction or loss by confiscation from that particular location." It defends this act, claiming that "there was never asserted any *charge against* the real property or any *security interest* asserted in the real property, nor was it designed to encumber the real property." (Emphasis in

original). The district court determined the Claim of Ownership was a nonconsensual common law lien prohibited by Idaho Code section 45-811 and ordered the release and discharge of the Claim of Ownership. We affirm the district court's decision.

### A. Black Diamond's Claim of Ownership is a nonconsensual common law lien.

Idaho Code section 45-811 prohibits nonconsensual common law liens. It states:

(1) For purposes of this section, "nonconsensual common law lien" means a *lien* that:
    (a) Is not provided for by a specific state or federal statute;
    (b) Does not depend upon the consent of the owner of the property affected for its existence;
    (c) Is not a court-imposed equitable, judgment or constructive lien; and
    (d) Is not of a kind commonly used in legitimate commercial transactions.

I.C. § 45-811 (emphasis added).

"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." I.C. § 45-101. "Under Idaho law, a lien is a charge upon property to secure payment of a debt and transfers no title to the property subject to the lien." *Chavez v. Barrus*, 146 Idaho 212, 221, 192 P.3d 1036, 1045 (2008). Black Diamond argues that the Claim of Ownership fails to qualify as a lien because Black Diamond "ha[d] no intent or objective to assert a lien against any real property to create a charge and security interest to address a debt, act, or obligation." Black Diamond claims following the plain language would lead to a conclusion that the Claim of Ownership is not a lien because it was recorded to give notice of ownership rather than to assert a charge against or claim a security in real property. The Personal Representative responds that while Black Diamond asserts the intent is not to be a security against the property, the actual language of the Claim of Ownership belies that intent.

The district court concluded that the Claim of Ownership was a common law lien. The district court held that despite Black Diamond's claim that it never intended to assert a claim over the Gowen Property, "the [Claim of Ownership] can be found in the Gowen Property chain of title. Whether intended or not, recording the [Claim of Ownership] in this matter serves as an encumbrance on the real property." We agree.

Statutory interpretation begins "with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written."

*Harrison,* 147 Idaho at 649, 214 P.3d at 635 (quoting *McLean*, 142 Idaho at 813, 135 P.3d at 759). Here, although the Claim of Ownership is not a traditional lien, it is the type of lien prohibited by Idaho Code section 45-811. The Claim of Ownership was a notice filed with the county recorder. State record laws require that "[a]ny instrument or judgment affecting the title to or possession of real property may be recorded under this chapter." I.C. § 55-801. "The primary purpose of the recording statutes is to give notice to others that an interest is claimed in real property, and thus give protection against bona fide third parties who may be dealing in the same property." *Matheson v. Harris*, 98 Idaho 758, 761, 572 P.2d 861, 864 (1977). Under section 55-801, the intent of the lien is immaterial—if a lien affects an interest in real property and runs afoul of the plain language of Idaho Code section 45-811, it is a prohibited nonconsensual common law lien.

Black Diamond has not disputed that all of the four factors in section 45-811 identifying a prohibited common lien have been met. Instead, it argues that the Claim of Ownership is not a lien at all. However, a review of the Claim of Ownership shows that it identifies a claimant and obligor—Black Diamond is the "Claimant" and Noah G. Hillen, the original personal representative, is the "Obligated person . . . responsible to Claimant." The Claim of Ownership also identifies an obligation. The Claim of Ownership states that Hillen "shall be liable to Claimant for the minimum market valuation of said agricultural commodity and crop-product in the sum of $17,500,000.00" if there is any loss, damage, etc.[5] The obligation is to return the compost or pay for its value. Additionally, the Claim of Ownership was intended to run with the land, as it states, "[t]hat the Obligated person or persons responsible to Claimant, and to whom this Notice of Ownership is laid upon and against is Noah G. Hillen, in his individual capacity, and to any assignee or assignees deriving from said Hillen as a result of any asserted ownership interests in the real property . . . ." Although the Claim of Ownership does not assert an amount recoverable against the Gowen Property—only against its owners—it was still filed to secure the obligation of the Personal Representative to return the compost or reimburse Black Diamond for its value. Thus, it had the effect of a lien by clouding the title to the Gowen Property.

Black Diamond argues that the district court erred because the terms "cloud" and "encumbrance" as used in Idaho case law only refer to a *financial interest*. This is an inaccurate

---

[5] It is telling that Black Diamond valued the claimed "liability" of Hillen at $17,500,000.00 while the Personal Representative was attempting to sell the property for $13 million. The fact that Black Diamond sought $4.5 million more than the proposed sales price for the Gowen Property indicates Black Diamond intended to cloud the Personal Representative's title and to impair the sale of the property.

and overly narrow reading of our case law. Black Diamond relies on this Court's decision in *Regan v. Owen*, 163 Idaho 359, 413 P.3d 759 (2018), in which this Court redefined "encumbrance." Originally, this Court held that "[a]n incumbrance may otherwise be defined to be any right or interest in land to the diminution of its value, but consistent with the free transfer of the fee." *Hunt v. Bremer*, 47 Idaho 490, 276 P. 964, 965 (1929). However, in *Regan*, this Court determined that the term "encumbrance" as used in Idaho Code section 63-1009 ("Effect of Tax Deed as Conveyance") is limited to a financial interest. 163 Idaho at 363, 413 P.3d at 763. Yet, "[b]roadly speaking, a cloud on title 'is an outstanding instrument, record, claim, or encumbrance which is actually invalid or inoperative, but which may nevertheless impair the title to property.' " *Bennett v. Bank of Eastern Oregon*, 167 Idaho 481, 492–93, 472 P.3d 1125, 1136–37 (2020) (citing *Beal v. Mars Larsen Ranch Corp.*, 99 Idaho 662, 667, 586 P.2d 1378, 1383 (1978)). Thus, a claim of ownership, like the one at issue here, can (and did) cloud title to real property.

The Personal Representative cites *Browning v. Griffin*, 140 Idaho 598, 600, 97 P.3d 465, 467 (Ct. App. 2004), as analogous and illustrative to the issue at hand. In *Browning*, the "City of Spirit Lake contracted for construction work to be done near property owned by Browning." *Id.* at 598, 97 P.3d at 465. Some of the equipment to be used was provided by Spirit Lake Sand & Gravel, Ltd. ("SLS&G"). *Id.* SLS&G determined Browning had stolen or vandalized some of the equipment and "recorded a notice of lien in the amount of $50,000 against Browning's property based upon [its] contention that Browning owed it damages for the alleged theft or vandalism." *Id.* Browning did not know about the lien until he attempted to obtain a mortgage loan on his property. *Id.* at 599, 97 P.3d at 466. On appeal, the Court of Appeals concluded that the lien "straightforwardly asserts a lien to secure a tort claim against Browning for allegedly stealing or vandalizing Griffin's equipment." *Id.* at 600, 97 P.3d at 467. The court went on to hold that the lien met all four factors of nonconsensual common law liens. *Id.*

Here, the Personal Representative argues that "Black Diamond attempts to do the same thing the Court of Appeals said Griffin could not do in *Browning*, *i.e.*, record the [Claim of Ownership] for the purposes of securing a tort claim against the [Personal Representative] (as the obligor) in favor of Black Diamond (as the claimant)." The language of the Claim of Ownership supports this assertion:

> That Claimant does Notify Hillen that Claimant will seek recovery for any damage, loss, injury, depreciation, contamination, or devaluation to Claimant's agricultural commodity and crop-product from and after June 28, 2020, due to the

interference in the production, preservation, maintenance, storage and ownership of the compost and humus located on the real property. Claimant does seek to be compensated for any losses, damages, destruction, disappearance, injury, depreciation, contamination, or devaluation to this agricultural commodity and crop-product, and any removal of said compost and humus as may occur as a result of the actions of said Hillen, his agents, assigns, and/or representatives, and/or any assignees of said Hillen, persons or entities that have caused or contributed to the loss, damage, destruction, disappearance, injury, depreciation, contamination, or devaluation of this agricultural commodity and crop-product, or any activity by them, as may be undertaken from any attempt at the relocation, or their mismanagement, neglect, exposure to wind erosion, weed infestation, weed contamination, manure contamination, and spreading thereof or any act that contributes to the devaluation, destruction, and/or disappearance, of any of the compost and humus quantities, and shall be liable to Claimant for the minimum market valuation of said agricultural commodity and crop-production in the sum of $17,500,000.00 for the value thereof in its current state of existence on June 28, 2020.

As in *Browning*, Black Diamond filed the Claim of Ownership to secure its claim against Hillen for keeping the compost and humus and for any damage done to the compost and humus. However, Black Diamond maintains that the Claim of Ownership is not against the Gowen Property. While the Claim of Ownership does not assert an amount due directly against the property, it states that Black Diamond will seek recovery in the amount of $17,500,000.00 from Hillen or other persons or entities responsible if the compost and humus are damaged or not returned. The language states that the Personal Representative, his agents, assigns, or representatives, or other responsible persons or entities will be liable for that amount. Like in *Browning*, the Claim of Ownership was clearly filed to secure a tort claim, albeit a prospective one.

For these reasons, we conclude that the district court correctly found that the Claim of Ownership improperly clouds the title to the Gowen Property. Nonconsensual common law liens are typically unconventional in their form and substance—in fact, they can come in all shapes and sizes and are limited only by the cleverness of their drafters and their capacity for mischief. Thus, if the Claim of Ownership looks like a lien, acts like a lien, and has the effect of a lien, we conclude that—at least in this instance—it is a lien. While it may not neatly fall under the definition of a traditional lien, the Claim of Ownership fits squarely in the category of nonconsensual common law liens that Idaho Code section 45-811 is meant to protect against: (1) it is not a lien provided for by statute; (2) it did not require the Personal Representative's consent; (3) it was not a court-imposed equitable, judgment or constructive lien; and (4) it is not a lien commonly used in

10

legitimate commercial transactions. Therefore, we affirm the district court's decision characterizing the Claim of Ownership as a prohibited nonconsensual common law lien.

**B. The district court did not err when it ordered the release and discharge of Black Diamond's recorded Claim of Ownership.**

Since the Claim of Ownership is a nonconsensual common law lien, the Personal Representative is entitled to a release and discharge of Black Diamond's Claim of Ownership. Idaho Code section 45-811(3)(a) states, "[a] person whose real or personal property is subject to a recorded claim of a nonconsensual common law lien may at any time petition the district court of the county in which the claim has been recorded for an order releasing the claim." The Court of Appeals in *Browning* held, "Even an invalid lien constitutes a cloud on the title of the property owner. An unenforceable lien may deter potential buyers or lenders from purchasing the property or accepting the property as security for a loan." *Browning*, 140 Idaho at 467, 97 P.3d at 467; *see also Bennett*, 167 Idaho at 492, 472 P.3d at 1136 (holding "an expired judgment lien nevertheless constitutes a cloud on title redressable by the quiet-title action.") "An action to remove a cloud on the plaintiff's title is one in equity. A court of equity will not in general allow an otherwise clear title to be clouded by a claim unenforceable at law or in equity." *Beal*, 99 Idaho at 667, 586 P.2d at 1383 (internal citations omitted).

Black Diamond's Claim of Ownership was a nonconsensual common law lien that clouded the Personal Representative's title of the Gowen Property. Idaho Code section 45-811 provides redress for plaintiffs, like the Personal Representative here, to have a nonconsensual common law lien released and discharged by a reviewing court. Therefore, we affirm the district court's order releasing and discharging Black Diamond's Claim of Ownership.

**C. The district court did not err when it awarded the Personal Representative $5,000 as a civil penalty.**

The district court awarded the Personal Representative a $5,000 civil penalty against Black Diamond pursuant to Idaho Code section 45-811(4)(a), which states:

> Any person who files or records in the office of a county clerk or recorder, or with the secretary of state, any document attempting to create a nonconsensual common law lien against real or personal property, and who has refused or failed to withdraw such document upon written request by the owner of the property, *shall be liable to the owner for the sum of not less than five thousand dollars ($5,000) or for actual damage* caused thereby, whichever is greater, together with any court costs and reasonable attorney's fees.

11

(Emphasis added). Since the district court correctly concluded that the Claim of Ownership was a nonconsensual common law lien prohibited by Idaho Code section 45-811, the Personal representative was entitled to the $5,000 civil penalty. Black Diamond has offered no legal basis for denying this relief. Therefore, we affirm the district court's decision to award the penalty against Black Diamond.

## D. The district court did not err when it awarded the Personal Representative attorney fees and costs.

The district court awarded the Personal Representative attorney fees and costs pursuant to Idaho Code section 45-811. Idaho Code section 45-811(4) states:

(a) Any person who files or records in the office of a county clerk or recorder, or with the secretary of state, any document attempting to create a nonconsensual common law lien against real or personal property, and who has refused or failed to withdraw such document upon written request by the owner of the property, shall be liable to the owner for the sum of not less than five thousand dollars ($5,000) or for actual damage caused thereby, whichever is greater, together *with any court costs and reasonable attorney's fees*.

(b) Any lienor or other person claiming interest in property under a recorded nonconsensual common law lien against real or personal property who has refused or failed to record a release or disclaimer of interest in such property upon written request by the owner of the property *shall be liable to the owner for the damages, court costs and attorney's fees* provided in paragraph (a) of this subsection.

(Emphasis added). Although Black Diamond was asked repeatedly prior to the commencement of this litigation to release and disclaim the Claim of Ownership, it refused to do so. Section 45-811(4) clearly supports the district court's conclusion that inasmuch as Black Diamond filed a prohibited nonconsensual common law lien, it *shall* be liable to the Personal Representative for attorney fees and costs. Since the Claim of Ownership acted as a nonconsensual common law lien, the district court did not err in awarding the Personal Representative attorney fees and costs.

## E. The Personal Representative is entitled to costs and attorney fees on appeal.

Black Diamond seeks attorney fees pursuant to Idaho Code section 12-121. The Personal Representative asserts he is entitled to attorney fees pursuant to Idaho Code section 45-811(4) or, alternatively, Idaho Code section 12-121. Under either statute, only the prevailing party is entitled to attorney fees.

As noted above, Idaho Code section 45-811(4) states that a person who files a "nonconsensual common law lien against real . . . property, and who has refused or failed to withdraw such document upon written request by the owner of the property, *shall be liable* to the

owner . . . court costs and reasonable attorney's fees." (Emphasis added). This is nondiscretionary language. Therefore, since we have determined that the Claim of Ownership is a nonconsensual common law lien, an award of costs and attorney fees to the prevailing party is mandatory. Accordingly, we award costs and attorney fees on appeal to the Personal Representative pursuant to Idaho Code section 45-811(4). The Personal Representative is also entitled to costs as a matter of course pursuant to Idaho Appellate Rule 40(a).

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court and hold that it did not err in the following decisions: (1) determining the Claim of Ownership to be a prohibited nonconsensual common law lien; (2) ordering the lien to be released and discharged; (3) imposing a $5,000 civil penalty against Black Diamond; and (4) awarding attorney fees to the Personal Representative pursuant to Idaho Code section 45-811(4). As the prevailing party in this appeal, the Personal Representative is also entitled to an award of attorney fees and costs incurred on appeal pursuant to Idaho Code section 45-811(4) and Idaho Appellate Rule 40(a).

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**